## Case No. 14,591.

### UNITED STATES v. BICKFORD.

[4 Blatchf. 337; [1] 22 Law Rep. 273; 7 Pittsb. Leg. J. 119.]

Circuit Court, D. Vermont.   July, 1859.

INDICTMENT—JOINDER OF DISTINCT FELONIES — PRACTICE—COPY OF INDICTMENT—TRANSMITTING FALSE PAPERS—TRIAL—ELECTION.

1. An indictment founded on the act of March 3, 1823 (3 Stat. 771), and charging the defendant

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

with knowingly transmitting false papers to the pension office, in support of applications for bounty land under section 9 of the act of March 3d, 1855 (10 Stat. 702), and containing 138 counts, each for a distinct felony, and some of which charged subornation of perjury, was objected to, on a motion to quash, because of the joinder in it of distinct felonies, and also of felonies of different grades: Held, that the indictment was warranted by the act of February 26th, 1853 (10 Stat. 162), but that the counts for subornation of perjury must be stricken out.

2. A prisoner is not entitled to have a copy of the indictment against him furnished to him at the expense of the government.

[Cited in U. S. v. Van Duzee, 140 U. S. 173, 11 Sup. Ct. 760.]

3. It is an offence, under the said act of March 3d, 1823, to transmit false papers, for the purpose of obtaining from the United States a bounty land warrant.

4. Declarations and affidavits subscribed and sworn to by the signers, are "papers," within said act.

5. If the papers are transmitted from Vermont to Washington City, the offence is committed in Vermont.

[Cited in Re Palliser, 136 U. S. 257, 10 Sup. Ct. 1036.]

6. On a motion by the defendant that the government elect upon which of 100 counts in an indictment it would proceed, the court refused to interfere.

7. It is not necessary, under the said act of March 3d, 1823, to show that the prisoner actually transmitted the papers. It is an offence to procure the papers, with a view to their transmission by another.

8. Where a prisoner demurs to an indictment, and the demurrer is heard and overruled, and he is then required to plead to it without having it read to him, and it is not read to the jury, the reading of it not being, in either case, demanded by him, such omissions to read the indictment furnish no ground for a motion in arrest of judgment.

Before NELSON, Circuit Justice, and SMALLEY, District Judge.

This was an indictment founded on the act of March 3d, 1823 (3 Stat. 771), in which the defendant was charged with knowingly "transmitting false papers" to the pension office at Washington, in support of applications for bounty land, under section 9 of the act of March 3d, 1855 (10 Stat. 702), in behalf of those who "served as volunteers at the invasion of Plattsburg." The indictment was found at the July term, 1858, and contained one hundred and thirty-eight counts, each one being for a distinct felony. Some of the counts charged subornation of perjury.

At the October term, 1858, the defendant's counsel filed a motion to quash the indictment, because of the joinder in the same indictment, of distinct felonies, and also of felonies of different grades, and relied on the case of U. S. v. Peterson [Case No. 16,037], and cases there cited. The court overruled the motion to quash, and upheld the indictment, as being warranted by the act of February 26, 1853 (10 Stat. 162), which contains this provision: "Whenever there are, or shall be, several charges against any person or persons, for the same act or transaction, or for two or more acts or transactions connect-

ed together, or for two or more acts or transactions of the same class of crimes or offences, which may be properly joined, instead of having several indictments, the whole may be joined in one indictment, in separate counts." The court, however, ordered all counts for subornation of perjury to be stricken out of the indictment, thus reducing the number of counts to about one hundred, each of which was for transmitting "false writings."

The defendant applied to the court for an order that a copy of the indictment be furnished to him by the government, and before trial, and relied upon article 6 of the amendments to the constitution of the United States, which requires that, in all criminal prosecutions, the accused shall "be informed of the nature and cause of the accusation." The court held, that no copy of the indictment could be furnished at the expense of the government, inasmuch as the law had made no provision therefor. The cause stood over for trial at the July term, 1859.

The defendant now demurred to the indictment, upon the following grounds: (1) That the offences charged did not come within the act of March 3d, 1823, as the act expressly referred to the making and transmitting of false papers, for the purpose of obtaining from the United States, or their officers, "any sum, or sums of money," and could not be extended to the case of an application for a bounty land warrant; (2) that the papers alleged to contain false statements were not such as were enumerated in the act, but were merely declarations and affidavits, subscribed and sworn to by the signers; (3) that no offence was charged to have been committed in the district of Vermont, but only an offence in the District of Columbia. The demurrer was overruled by the court, the last two points being regarded by the court as virtually decided in the case of U. S. v. Staats, 8 How. [49 U. S.] 41.

The defendant was then called by the clerk, by direction of the court, and, having appeared at the bar, the district attorney observed to the court, that he supposed it was unnecessary to read the indictment to the prisoner. The court replied, "Certainly not; let him plead." The clerk then put this inquiry to the prisoner: "To this indictment, do you plead guilty or not guilty?" The prisoner pleaded "not guilty." The indictment was very voluminous, containing several hundred pages. The jury having been impannelled and sworn, the district attorney submitted to the court, that it was not necessary that the indictment be read to the jury, and the court directed that it should not be read to the jury, saying to the district attorney, that he could state to the jury, in substance, the matters charged, and the proofs expected to be introduced. The opening statement was then made to the jury by the district attorney. Before the trial commenced, the defendant's counsel moved the court that the government be required to elect upon which of the counts they would proceed, but the court refused to interfere. The district attorney gave notice, however, two or three days before the trial, to the defendant's counsel, of his purpose to offer testimony upon only about twenty different counts, embracing only fifteen different cases of application for bounty lands. Many of the witnesses for the government testified that they signed and made oath to the declarations and affidavits before the defendant, as a notary public, but that they were, in some respects, materially false, and different from what they stated to the defendant at the time he wrote them, and from their understanding of their contents when they signed them. Others testified, that their affidavits, although signed and certified as sworn to before the defendant, were never in fact sworn to. The defendant proved, that in doing the business of making out the applications, he was in the employ of another person, to whom he sent or delivered the papers, when completed, and that, for this service, he received a compensation for his time and expenses. It appeared, that most of the papers described in the indictment were transmitted to the pension office by the defendant's employer. The counsel for the defendant requested the court to charge the jury, that, for papers so transmitted, the defendant was not liable. The court declined so to charge, but charged as follows: "It is insisted, by the counsel for prisoner, that, as the papers were not transmitted to the department by the hand of the prisoner, the prisoner is not liable, if the papers are false—that the prisoner's guilt requires the element of transmission. It appears, that the prisoner was in the employment of Buswell; that the papers were sent to Buswell, by the prisoner, to enable Buswell to transmit them; and that the prisoner was employed by Buswell, (on some terms, and it is difficult to ascertain precisely what,) to aid Buswell to procure land warrants. It further appears, that, although not directly interested in getting these warrants, still, the prisoner was engaged in speculations in land warrants and claims, and thus had a kind of interest. It is, evidently, not necessary, under the act, to show that the prisoner actually transmitted the papers. Any party participating in the crime, co-operating in the crime, aiding or assisting in the crime, is liable. The prisoner aided and assisted and participated in one of the elements of the crime, to wit, in procuring these papers, to enable Buswell to complete the crime, by transmitting the papers to Washington. It is not at all material that the government should show that the prisoner transmitted the papers himself, for, if he procured them for Buswell to transmit, he is as guilty as if he had himself transmitted them."

The jury returned a verdict of guilty, after which the defendant moved in arrest of judg-

ment, assigning, among other causes:—(1) That the prisoner was required to plead without having the indictment read to him; (2) that the indictment was not read to the jury. On these points the motion was overruled, on the ground that a demurrer to the indictment had been filed and heard, and that the reading was not demanded.

[The respondent was sentenced for the term of four years to the state prison, and the payment of a fine of five hundred dollars.] [2]