### PATTERSON and another v. STAPLER.

*(Circuit Court, D. New Jersey.   April 12, 1881.)*

1. PATENT RIGHT.— EQUITABLE OWNER — INFRINGEMENT — PARTY TO SUIT.

> If the owner of an equitable right or interest in a patent institute a suit in equity for his own benefit, in the name of the owner of the legal title to the patent, for an injunction and an account, he will be made a co-plaintiff with the owner of the legal title upon application to the court.

2. SAME—SAME—SAME—SAME.

> The application will be sustained, even though made after answer is filed, testimony is published, and the case is placed on the term calendar for final hearing, if it appear that the suit was instituted and the costs were incurred by the owner of the equitable right for his expected benefit and profit.

3. LETTERS PATENT No. 132,368—IMPROVEMENT IN PAPER BOXES—ANTICIPATION.

> A box made out of a single sheet of pasteboard or other suitable material, provided with a projecting piece on one end thereof, and cut, folded, and joined by such projecting piece so as to form a packing box having a top and bottom each composed of four pieces of material of desired proportions, the bottom being formed by folding and cementing the four pieces thereof upon each other, as described and shown in letters patent No. 132,368, dated October 21, 1872, issued to Charles T. Palmer, is anticipated by boxes previously made for bottles and buttons, and therefore said Palmer patent, as respects the first claim thereof, is void.

In Equity.

NIXON, D. J.   This suit was originally brought by Cunningham S. Patterson, as the owner of certain letters patent, No. 132,368, dated October 21, 1872, issued to one Charles T. Palmer, for improvement in paper boxes, against the defendant, for an injunction and an account for violating the said letters patent.   After an answer by the defendant and the publication of the testimony and the placing the case upon the term calendar for final hearing, an application was made to the court to amend the proceedings by making the Novelty Paper Box Company—a corporation of the state of Pennsylvania—a co-plaintiff in the case.   Upon hearing the application it appeared in evidence that, whilst Patterson held the

legal title to the patent on which the suit was brought, the said corporation was the equitable owner, and was solely interested in the gains and damages following a decree for the complainant. Under these circumstances, and also in view of the fact that all the costs of the suit had thus far been incurred by the corporation for its expected benefit and profit, the court ordered the amendment to be made. See *Stimpson* v. *Rodgers*, 4 Blatchf. 337.

The answer of the defendant raises several issues, but as the only proof offered by the complainant was that taken to establish their *prima facie* case, and as that limits the controversy entirely to the first claim of the patent, the defendant has confined his defence to said claim, and all his testimony seems to relate to the prior state of the art, for the purpose of showing that Palmer was not the original and first inventor of the improvements in paper boxes described and made the subject-matter of said claim.

Turning to the patent we find the claim to be as follows: "The sheet, A, (in figure 4,) provided with the projection or connection piece, B, and cut and folded substantially as described and represented, in order to constitute in whole or in part a packing box, all being substantially as set forth."

The specifications are quite minute. It is not easy to refer intelligibly, without having figure 4 of the patent before us to illustrate the reference. It may be said generally "that the first claim relates to a sheet of pasteboard, or other suitable material, provided with the projection or connecting piece, as shown in said figure, and cut and folded and joined by said projection piece so as to form a packing box having a top and bottom, each composed of four pieces of material of the desired proportions, the bottom being formed by folding and cementing the four pieces upon each other."

Is such a combination, in the formation of a paper box, new and patentable? The evidence is all against its novelty. Several different paper boxes were exhibited, called by the respective witnesses bottle boxes, button boxes, and silk-back button boxes, all of which clearly anticipate the box described and claimed by Palmer.

Dr. Henry M. Smith, president of Smith's homœopathic pharmacy, of New York, testifies that as early as 1850 he caused to be manufactured a paper box for packing medicines, constructed as follows: "Each wrapper or box was made of one piece of pasteboard, cut of the requisite size, creased so that it would fold over, making the four sides and two ends, three sides being single thickness and one side double thickness the ends being two or four thicknesses, as we used two or four flaps. When the side was double thickness, it was where the box was glued or riveted together, because we did both. The box was filled through what we would call the ends, which were then fastened by glue, a string, or left unfastened."

James Harvey, a practical paper-box maker, began in 1862 to make square bottle boxes for T. Morris Perrot & Co. of Philadelphia. These were cut out of a square piece of board, and scored on a scoring machine,—some with a lap, and some without; some with flaps, and some without. The boxes put together with a lap on the side each contained four score marks lengthwise, to form a tube with a lap, to secure the tube in shape, and to score marks crosswise, to form the four flaps on each end of the box; that these four flaps were made by slitting the same to the score marks, which were made crosswise, and were intended for the top and bottom of the box, and that the boxes were joined in tubular form by gluing the lap on the sides, and the contents secured therein by pasting a label or wrapper over the folded flaps on the ends of the box.

To the same effect is the evidence of Mr. Wheeler in regard to the button boxes manufactured at Naugatuck and Westport, Connecticut, thirty years ago, for the packing of buttons. He says: "We cut a blank of paper or straw board the requisite size of the box, and then we run it through a scoring machine; we scored it crosswise four times, lengthwise twice, and we cut down the scoring on the ends to the scoring lengthwise; we cut out the corner of one end, what we call the lap, and then folded down the flaps that we made by cutting down to the scoring; then we paste what we call a

wrapper, and fold it right over the pasteboard, which forms the box."

In view of such testimony it is not surprising that the complainants did not appear at the hearing to sustain the validity of their patent. It is anticipated by these exhibits, and, being void for want of novelty, the complainants' bill must be dismissed with costs.