KRAUSE et al. v. UNITED STATES.*

(Circuit Court of Appeals, Eighth Circuit. August 20, 1906.)

No. 2,359.

1. CRIMINAL LAW—CONSOLIDATION OF INDICTMENTS.

Indictments charging offenses of the same nature and degree and based on the same statute may be consolidated for trial under Rev. St. § 1024 [U. S. Comp. St. 1901, p. 720].

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 1376.]

2. SAME— SEPARATE TRIAL OF CODEFENDANTS—DISCRETION OF COURT.

The request of defendants charged in the same indictment for separate trials is addressed to the discretion of the court, and its action in refusing the same will not be reviewed in the absence of clear indications that serious prejudice resulted therefrom to one or more of the defendants.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 1380; vol. 15, Cent. Dig. Criminal Law, § 3050.]

3. SAME—WRIT OF ERROR—REVIEW—PRESUMPTIONS—SENTENCE—GOOD AND BAD COUNTS.

Where defendants were acquitted on certain counts of an indictment and convicted on others, and the judgment imposes a punishment within the limits permissible under any one of such counts, if any of them are good it is sufficient to support the judgment.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, § 3035.]

4. PUBLIC LANDS—UNLAWFUL INCLOSURE—INDICTMENT—SUFFICIENCY.

Indictments under Act Feb. 25, 1885, c. 149, § 1, 23 Stat. 321 [U. S. Comp. St. 1901, p. 1524], for inclosing and asserting a right to the exclusive use and occupancy of public lands without claim or color of title thereto acquired in good faith under the land laws, considered, and *held* good.

5. CRIMINAL LAW—REVIEW ON ERROR—SUFFICIENCY OF EVIDENCE.

Where the bill of exceptions in a criminal case does not profess to contain all the evidence, the appellate court must assume that there was sufficient to support the verdict.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, § 3031.]

6. JURY—PEREMPTORY CHALLENGES IN CRIMINAL CASE—CONSOLIDATION OF INDICTMENTS.

Semble, that when a number of indictments against the same defendants charge similar offenses of the same degree, based on the same statute, and which might have been charged in separate counts of the same indictment, their consolidation for trial places them in the same category as if they were separate counts of one indictment, and the defendants are entitled to only the same number of peremptory challenges.

*Rehearing denied December 5, 1906.

7. CRIMINAL LAW—WRIT OF ERROR—REVIEW—HARMLESS ERROR—PEREMPTORY CHALLENGES—FAILURE TO EXHAUST.

A defendant who does not exhaust the peremptory challenges allowed him cannot assign as error the refusal of the court to allow a greater number.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, § 3115.]

8. PUBLIC LANDS—ILLEGAL INCLOSURE—PROSECUTION—EVIDENCE.

On the trial of an indictment for inclosing and asserting an exclusive right to public land without claim or color of title, in violation of Act Feb. 25, 1885, c. 149, 23 Stat. 321 [U. S. Comp. St. 1901, p. 1524], acts, conduct, and statements of defendants tending to show the assertion of a right to exclude the general public or others from the lands described are competent evidence.

9. CRIMINAL LAW—ERROR IN ADMISSION OF EVIDENCE—CORRECTION BY INSTRUCTION.

The misconduct of a prosecuting attorney in securing the admission of incompetent testimony, prejudicial to defendants upon his statement that its materiality would later be shown, was rendered harmless, and the admission of such evidence is not assignable as reversible error where the court subsequently clearly stated to the jury that they should disregard it.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 2122.]

10. SAME—JOINDER OF DEFENDANTS IN WRIT OF ERROR—DECISION OF APPELLATE COURT.

Where two defendants tried together after conviction sued out a joint writ of error and joined in the assignment of errors and argument, the appellate court cannot consider their cases separately, but must affirm or reverse as to both.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, § 3215.]

In Error to the District Court of the United States for the District of Nebraska.

R. C. Noleman and C. C. Barker, for plaintiffs in error.

Sylvester R. Rush, Special Asst. U. S. Atty. (Charles A. Goss, U. S. Atty., on the brief).

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. The defendants were prosecuted under three indictments, found at successive terms of court, containing in all 17 counts.

They are predicated of sections 1 and 3, c. 149, Act Feb. 25, 1885, 23 Stat. 321, 322 [U. S. Comp. St. 1901, pp. 1524, 1525], which are as follows:

"That all inclosures of any public lands in any state or territory of the United States, heretofore or to be hereafter made, erected, or constructed by any person, party, association, or corporation, to any of which land included within the inclosure the person, party, association, or corporation making or controlling the inclosure had no claim or color of title made or acquired in good faith, or an asserted right thereto by or under claim, made in good faith with a view to entry thereof at the proper land office under the general laws of the United States at the time any such inclosure was or shall be made, are hereby declared to be unlawful, and the maintenance, erection, construc-

tion, or control of any such inclosure is hereby forbidden and prohibited; and the assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States in any state or any of the territories of the United States, without claim, color of title, or asserted right as above specified as to inclosure, is likewise declared unlawful, and hereby prohibited."

"Sec. 3. That no person, by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means, shall prevent or obstruct, or shall combine and confederate with others to prevent or obstruct, any person from peaceably entering upon or establishing a settlement or residence on any tract of public land subject to settlement or entry under the public land laws of the United States, or shall prevent or obstruct free passage or transit over or through the public lands: Provided, this section shall not be held to affect the right or title of persons, who have gone upon, improved, or occupied said lands under the land laws of the United States, claiming title thereto in good faith."

As the offenses charged are under the same statute, with the proper information whch should precede the presentation of an indictment for the consideration of the grand jury, the offenses could have been embraced in one indictment, and with proper analysis could have been condensed into fewer counts, always to be desired, as it tends to prevent embarrassing confusion in the consideration of a multiplicity of issues which are difficult to be intelligently carried in the minds of the jury through a protracted trial, and to be properly separated in making up their verdict.

But there is no merit in the objection made on behalf of plaintiffs in error (hereinafter for convenience designated the defendants) to the action of the court in consolidating the several indictments for trial. As the several acts charged are predicated of legally allied transactions of the same degree, their consideration for trial to one jury was permissible under section 1024, Rev. St. U. S. [U. S. Comp. St. 1901, p. 720]. Logan v. United States, 144 U. S. 263, 12 Sup. Ct. 617; 36 L. Ed. 429; Pointer v. United States, 151 U. S. 401, 14 Sup. Ct. 410, 38 L. Ed. 208; Bucklin v. United States (No. 2) 159 U. S. 685, 16 Sup. Ct. 182, 40 L. Ed. 304.

Neither was there reversible error in the action of the court in refusing the request of defendants for separate trials. In practice this is matter resting largely in the sound discretion of the trial court, which will not be reviewed in the absence of clear indications that serious prejudice resulted therefrom to one or more of the defendants. United States v. Ball, 163 U. S. 662, 16 Sup. Ct. 1192, 41 L. Ed. 300. At the time such preliminary question arises the judge, not being in possession of other facts than those disclosed on the face of the indictment, must act thereon until a clear showing made on the part of the objecting defendant that his interests will be seriously prejudiced by a joint trial. And where it becomes apparent to the presiding judge in the progress of the trial that injustice may be done to any defendant by such joint trial, it is to be presumed that he will afford relief by awarding a new trial. As the defendants were acquitted on certain counts and convicted on others, if any of the latter are good, they are sufficient to support the verdict; the penalty imposed by the judgment of the court being within the limit permissible under either of such counts. Dunbar v. United States, 156 U.

S. 185–192, 15 Sup. Ct. 325, 39 L. Ed. 390; Tubbs v. United States, 105 Fed. 61, 44 C. C. A. 357. Both defendants below were found guilty on the first and third counts of the third indictment; the defendant John Krause being sentenced to pay a fine of $800 and one-half the costs, and the defendant Herman H. Krause to pay a fine of $500 and one-half the costs.

The first count of the third indictment is predicated of section 1 of said statute, which, after laying the venue, charges that the defendants on the 1st day of August, 1903—

"Did then and there wrongfully, unlawfully, willfully and knowingly maintain and control an inclosure of the public lands of the United States, containing four thousand five hundred and sixty acres [a particular description of which follows], said inclosure so maintained and controlled consisting of and being posts and wire fences, and they, the said John Krause and Herman H. Krause, so maintaining and controlling said fence and inclosure as aforesaid, then and there having no claim or color of title to any of said land, made or acquired in good faith or asserted right thereto by or under claim made in good faith with a view to entry thereof at the proper land office of the United States in said District, under the general laws of the United States, contrary," etc.

This clearly enough charges the offense of maintaining and controlling an inclosure of public lands within the prohibition of the statute.

The third count charges that the defendants—

"Did then and there unlawfully, willfully, wrongfully, and knowingly assert a right to the exclusive use and occupancy of certain public lands of the United States, by then and there taking actual and exclusive possession thereof, and which said public lands consisted of four thousand five hundred and sixty acres [then follows a specific description of the land, being the same as that contained in the first count aforesaid], and they, the said John Krause and Herman H. Krause, then and there had no claim or color of title to any of said lands, or any asserted right thereto, by or under claim or color of title made or acquired in good faith, by or under claim made in good faith with a view to entry thereof at the proper land office of the United States in said district, under the general laws of the United States, contrary," etc.

This brings the act done clearly within the clause of the first section of the statute prohibiting "the assertion of a right to the exclusive use and occupancy of any part of the public lands   *   *   *   without claim, color of title, or asserted right," etc. In the absence of all the evidence presented at the trial (as the bill of exceptions does not profess to contain all the evidence) the court must assume that there was sufficient evidence to support the finding. McCarty v. United States, 101 Fed. 113, 41 C. C. A. 242; Durland v. United States, 161 U. S. 306, 312, 16 Sup. Ct. 508, 40 L. Ed. 709; Hansen v. Boyd, 161 U. S. 397, 16 Sup. Ct. 571, 40 L. Ed. 746. It therefore only remains to determine whether or not there was any reversible error committed by the court in the progress of the trial, the charge of the court not being preserved in the bill of exceptions.

The assignment of errors and the brief on behalf of defendants pay little heed to the rules prescribed by this court as to what they should contain. The questions sought to be raised are so obscured by lack of directness and specifications, and proper references to the record where

instances complained of may be found, that the court, out of a desire to see that no injustice was done to the defendants in matters of law, have imposed upon themselves much labor and pain in going carefully through the record of proceedings in search of any substantial errors.

Complaint is made of the statement of the court when inquired of as to how many peremptory challenges would be accorded to the defendants that they were entitled to only three. Unquestionably, had the trial been had on only one indictment, the defendants would have been entitled to but three peremptory challenges. Although there were three indictments, the offenses charged being based on the same statute and allied in character and degree, they could have been set out in separate counts, in the same indictment. Does it make any difference that the three indictments were consolidated for trial? In Mutual Life Insurance Company v. Hillmon, 145 U. S. 285, 12 Sup. Ct. 909, 36 L. Ed. 706, the beneficiary under several policies of insurance taken out upon the life of John W. Hillmon, in different insurance companies, brought separate suits on each policy against the insurers. They were consolidated for trial, and the question arose as to whether or not each defendant was entitled to three peremptory challenges. It was held that they were. The court said that, although consolidated for convenience in the economy of time and cost, the causes of action remained distinct and required separate verdicts and judgments; and neither of the defendants, without its consent, could be deprived of the material right of a peremptory challenge accorded by section 819 of the Revised Statutes [U. S. Comp. St. 1901, p. 629]. The case at bar is more nearly allied in its legal status to that of Betts v. United States, 132 Fed. 228, 65 C. C. A. 452, where the several indictments against the defendants were tried together before the same jury (only one of the defendants being on trial) without any order of consolidation. By a divided court it was held that the defendant was entitled to three peremptory challenges on each indictment. In the case at bar the several indictments were consolidated and tried as one case. In McElroy v. United States, 164 U. S. 77, 17 Sup. Ct. 31, 41 L. Ed. 355, the court, speaking of the order of consolidation, said:

"The order of consolidation under this statute put all the counts contained in the four indictments in the same category as if they were separate counts of one indictment."

From which it seems clear that where the offenses common to all the indictments, committed by the same defendants respecting the same subject-matter, which might have been embraced in separate counts in the same indictment, are consolidated, they stand "in the same category as if they were separate counts of one indictment." Be this as it may, the defendants did not place themselves in position to complain of the statement of the court at the trial, as they made no peremptory challenge whatever.

In Connecticut Mutual Life Insurance Company v. Hillmon, 188 U. S. 208, 212, 23 Sup. Ct. 294, 47 L. Ed. 446, the court, speaking to this question, said:

"We are of opinion that it [the defendant] is not entitled to take advantage of it, inasmuch as it made but two peremptory challenges, waiving its right to a third, and thereby acquiesced in the composition of the jury. * * * Having failed to exhaust its peremptory challenges, it stands in no position to complain that it was deprived of the right to challenge others."

Error is assigned of the act of the court in respect of the testimony of the witness De Freese. He was in the employ of the branch office of the Land Office Department located in Nebraska, and was sent to make examination into the charge of fencing the lands claimed to have been made and maintained by the defendants, and he made a rough survey thereof. Here, as generally throughout the trial, the defendants' counsel objected to almost every question asked of and answer made by the witness, without assigning any special, intelligible grounds therefor. The assignment of errors summarized is that there was error in permitting the witness to testify from Exhibit 1, and to his attention being directed to a red line running through the center of a given section. The court ruled that the witness might refer to the exhibit, and the witness answered that he drew the line. As this exhibit is not contained in the bill of exceptions, the court does not know what it was except inferentially. Again, the question was asked on what sections of township 25 did the witness follow the fence. The only objection to this was that the witness had not shown himself qualified. It is hardly possible for the court to know from this objection what was the precise thought in the mind of the objector. Its indefiniteness justified its rejection. Another assignment of error is that the defendants objected to the question:

"What was said at that time in regard to public lands, if anything, unless it was specifically as to the lands described in the indictment?"

Whether or not it pertained to lands described in the indictment and with whom he was talking does not appear from the objection or the record.

The only matter testified to by this witness, as disclosed by the record and assignment of errors, which might have been vulnerable to a valid objection, was his statement that he got the starting point for his survey from where one Albert Curry told him he lived. The objection which would naturally occur to the legal mind to this evidence is that it is hearsay. But no such objection was made. The very purpose of the rule requiring specific specifications of the grounds of objection to questions or answers or particular evidence is to advise the court and opposite counsel thereof, so that the objection might be obviated then and there. For instance, the only availing objection to the statement of De Freese that he got his starting point from one Curry is that it was mere hearsay. Had this objection been interposed, the court should have sustained it, and the prosecution might have obviated it by calling Curry (who, the record shows, was in attendance and testified in the case) to testify that the point or particular corner taken for the survey was correct.

Looking again to the record, we find that the witness De Freese testified to a conversation he had with the defendant John Krause, that Krause in effect admitted he had notice to remove the fence and

claimed that he had removed it. The witness said he inspected the fence again later and found it was not removed, and that this defendant called on him and in a conversation claimed that he had removed the fences, when the witness informed him that he had been out there a number of times and the fence was still there. This was a practical admission by the defendant that the fence spoken of by the witness was the one complained of and which he claimed to have removed.

In a most confused way error is assigned respecting the testimony of the witness Bessie Osborn. Complaint is especially made with reference to her testimony respecting a plat of the lands made by her, showing how the fences ran, which she testified were maintained by the defendants. She had for years lived in the locality in question, and claimed to be acquainted with all the "settlements" and inclosures thereabouts. She had acquired, according to her testimony, familiarity with the sectional divisions, with what lands had been homesteaded, and what were public lands. The accuracy or correctness of her information was for the consideration and determination of the jury, also as to the plat or map of the lands made out and testified about by her. If she or any other witness was in error in the identification of the lines and fences as related to the lands in question, it was open to the defendants to expose it by countervailing proofs, either by other witnesses or competent surveys. As indicative of the intelligent and reasonable restraint placed by the court on the identification of the lands in question by Mrs. Osborn, she was asked to state what certain lines on Exhibit A (which is said plat) represented. The defendants objected to this as being immaterial and being apart from the lands described. The court thereupon said:

"Does that fence inclose a part of, is it a part of the inclosure of this land?"

Mr. Rush, counsel for the government, interposed with the remark:

"There is a whole range covering a large amount of land and divided into fields.

"The Court: That is not an answer to my question at all. My question is, does that fence there with other fences which you have been describing make an inclosure which takes in this land which is described in the indictment?"

After some further interpositions of counsel, the court said:

"When you prove your general inclosure is this land which you claim as government land, is that inside or not?

"Answer: That represents a fence that is kept in good repair by Krause Bros. and their hired men."

In the progress of the trial there was evidence on the part of the government as to the location of certain gates and roads, the herding and ranging of defendants' cattle, colloquies, quarrels and fights betwen the defendants, or one of them, and persons seeking to make homesteads on or coming upon and over certain of the lands. On objections interposed by defendants, the court made the following statement:

"It is admissible for the purpose of showing what was the purpose and intent of their building these fences. Was it simply to inclose their own lands, or was it for the purpose of making the inclosure of government lands with their own or somebody else for the purpose of giving them a benefit over what the general public would have? * * * It certainly goes to show what was their intent and purpose in inclosing government land, if they inclosed any. * * * We are trying the question as to whether or not the Mr. Krauses have inclosed government land, with a view and a purpose of having a better control over it themselves than the public generally, and whatever they said or did with regard to land in this inclosure is competent as bearing upon their purpose and intent and good faith in building the inclosure, inclosing these lands if anything. * * * It is only material as it may bear upon the intent and purpose of the defendants in making the inclosure, if they did make the inclosure, as to whether or not their purpose and intent was to give to themselves a right to the use of government land to an extent greater than the general public could have. In other words, in a measure withdrawing the use of certain public lands from the general common use by all the public."

Again, when evidence was introduced respecting a certain fence that one Bissel put up which was objected to by the defendants, the court said:

"That is wholly immaterial except, in this, that because he was putting up a fence that encroached somewhat upon their inclosure and they were objecting to it resulted in a contest. That is evidence to go to the jury whether or not—for the purpose of determining whether or not the defendants in their inclosure were not claiming and having it there for the purpose of giving to themselves a benefit of the government lands within such inclosure, to the exclusion of others. In other words, have they put a fence around it and claimed that they had a better right to it than the general public? Whether or not that was the purpose."

We perceive no valid objection to these views of the court being expressed in the presence of the jury. The essential issue on trial was whether or not at the times in question the defendants had knowingly and wrongfully erected or maintained the inclosures on the public lands described, or were asserting exclusive right of occupancy without authority of law. Acts, conduct, and speeches by them tending to show the exercise or assertion of dominion over or right to the exclusive control of the lands, or any part thereof, bore directly upon the issue involved; and under the circumstances the many details of which aggregated were competent instances and matters for the consideration of the jury in forming a judgment as to the guilt or innocence of the accused.

On cross-examination of the defendant John Krause by the then United States Attorney he was asked if he did not have some trouble with a man named Sylvester. On objection the court observed that he did not see for the present how it was material whether he had trouble with a man named Sylvester or not. Thereupon the District Attorney asked the defendant if he had ever been arrested. The objection to this question was sustained. Thereupon the District Attorney began: "If your honor please— " Upon objection by defendants' counsel on the ground that there was nothing before the court the District Attorney said:

"Well, there will be in a few minutes. If your honor please, the government claims the right to show the character of this man, with reference to intimidating people up there in that vicinity and around this range, and it

147 F.—29

is in connection with that fact, and a fact that has played an important part in this intimidation."

The court then suggested to get at the facts in the first place so as to see whether it was important or not; that quarrels which he had had with people not connected with the occupancy of government lands were wholly immaterial. This was followed by a further question by the prosecution:

"Didn't you have trouble with a man by the name of Sylvester over the location of lands or claims within your range? A. I had trouble with one Sylvester. Q. Wasn't it with reference to lands there within your range? A. I don't think it was over lands. Q. Well, wasn't it over lines between lands?"

Against the objection of defendants' counsel the witness answered: "Well, I guess it was." It is to be observed that he was not asked as to whether it was with respect to lines between the lands in controversy. This was immediately followed up with the question: "And didn't you shoot this man Sylvester in the back and kill him?" Over the objection of defendants' counsel he was compelled to answer, and said: "I had the misfortune of killing the man Sylvester." Here the District Attorney dropped the matter; and on redirect examination the defendant testified that he was tried and acquitted for the Sylvester homicide, and that after being shot at by Sylvester he shot him in self-defense. Then on recross-examination the prosecution put this question:

"Isn't it true that you and your men or your brother drove along that day in a wagon there and you laid concealed in the wagon with the gun?"

Objection to this was sustained, and the court said:

"It was first admitted on the assumption that you were going to show that it related to keeping people from going upon the government land, and you haven't got to that at all. It is simply trouble over a fence."

Thereupon defendants' counsel moved that the testimony in regard to Sylvester be stricken out. This was overruled.

"Q. And haven't you boasted since that time that you had killed one man and that you would kill more if they didn't keep off your range? A. No, sir, I have never mentioned it."

Counsel for defendants renewed the objection in relation to the Sylvester incident and asked to have it stricken out. The court said:

"I think it should be overruled, but I don't think it has much to do with this."

The conduct of the District Attorney in respect to this incident is neither to be commended nor passed by without criticism. The trouble the court was led into fitly illustrates the wisdom of the law in suggesting to trial courts, as the better and safer rule, except under peculiar conditions, to require the prosecutor in the first instance to introduce the requisite preliminary proof showing the legal connection of the apparently extraneous matter with the transaction on trial. On the implied assurance of the prosecutor that he

would subsequently show that said homicide grew out of the controversy between the defendant John Krause and said Sylvester touching the assertion of dominion or control by the defendants over the lands in question, by his interrogatory he got before the jury the implication that the defendant John Krause had been guilty of an act of assassination.  As under the statute the offense in question was of no higher dignity than a misdemeanor, there was nothing in the case which, to the judicial mind, warranted an excess of zeal in the prosecution.  And while consideration for impulsive action of counsel, growing out of the competition and heat of a trial, may be recognized, the court should see to it that it is not indulged to the serious and unwarranted injury of a defendant in a criminal prosecution, who stands at the bar of justice clothed with the presumption of law that he is innocent.  The defendant in a criminal prosecution is an integral part of the composite body of the people represented by the prosecution, and as such he should be regarded as having claims to the fairness and impartiality of the government.

True it is, as suggested by counsel for the government at the hearing, that the defendant, while compelled to the admission before the jury that he had the misfortune to kill Sylvester, said he did so in self-defense, for which he was acquitted by a jury of the country (a fact which due inquiry on the part of the prosecution would have disclosed before bringing the incident to the attention of the jury), yet, as it is difficult often to entirely erase from the minds of some jurors who may have an aversion to a slayer of his fellow man, especially where all the explanatory facts are not before them in a collateral proceeding, it may not always be in the power of the court to entirely destroy the effect of such extraneous and incompetent evidence.  In so far as the prosecuting attorney is concerned, he seems to have been willing that the cause should be finally submitted to the jury without any request on his part to rectify his mistake.  The court, however, tried to accord to the defendant all the protection in its power at the time.  After the prosecuting attorney had entered upon his address to the jury the court, of its own motion, called their attention to the matter of the killing of Sylvester, and said:

"Gentlemen of the jury, the testimony relative to the killing of Sylvester was admitted upon the statement of the District Attorney that the government would show that the killing took place and grew out of the defendants' attempt to prevent persons from going upon public land within the defendants' inclosure, but there has been upon the part of the government an utter failure to show such facts.  Therefore, gentlemen of the jury, all of the testimony given by the witness John Krause relative to the killing of Sylvester is withdrawn and stricken out of this case, and you are instructed not to consider any testimony relative to the killing of Sylvester in your deliberations in this case, and treat the same as though it had never been admitted in evidence upon this trial."

In Pennsylvania Company v. Roy, 102 U. S. 451, 459, 26 L. Ed. 141, the Circuit Court had improperly admitted evidence as to the pecuniary responsibility of the plaintiff in a civil action for damages. In its charge to the jury the court directed that they would not take into consideration any evidence touching the plaintiff's pecuniary

condition at the time of his injury, because it is wholly immaterial how much a man may have accumulated up to the time he is injured. It was insisted on review of the case, notwithstanding the direction to the jury, that the original error was not thereby cured. After adverting to the fact that there are adjudged cases which announce the broad proposition that such error in the admission of evidence could not be corrected by instruction to the jury so as to cancel the exception taken to its admission, the court said it was against the great weight of authority that:

"The charge from the court that the jury should not consider evidence which had been improperly admitted was equivalent to striking it out of the case. The exception to its admission fell when the error was subsequently corrected by instructions too clear and positive to be misunderstood by the jury. The presumption should not be indulged that the jury were too ignorant to comprehend, or were too unmindful of their duty to respect, instructions as to matters peculiarly within the province of the court to determine. It should rather be, so far as this court is concerned, that the jury were influenced in their verdict only by legal evidence."

This ruling was followed by this court in Tubbs v. United States, 105 Fed. 59, 44 C. C. A. 357. See, also, Hopt v. Utah, 120 U. S. 430, 438, 7 Sup. Ct. 614, 30 L. Ed. 708. In view of the general rule thus laid down by the Supreme Court, and in deference to the action of the trial court refusing to grant a new trial predicated in part of the alleged misconduct of the prosecuting attorney, we feel constrained to overrule this assignment of error.

Contention is made that the trial court did not properly discriminate in the admission of evidence as it affected the respective defendants. There are several sufficient answers to this. (1) The charge of the court to the jury is not given in the bill of exceptions, and we have a right to assume that the attention of the jury was properly directed to any such differences in the proofs; (2) the verdict of the jury in finding the defendant Herman Krause not guilty on certain counts on which John Krause was found guilty, and the assessment by the court of different penalties against the defendants, clearly enough indicate that such discrimination was made both by the court and jury; and (3) the defendants sued out a joint writ of error, joined in the assignment of errors, and in an indiscriminate brief. Thus they made common cause, and in effect each sought to help the other; and there can be but one judgment by this court, either an affirmance or reversal as to both. Sibert v. Copeland, 146 Ind. 387, 44 N. E. 305; Long v. Clapp, 15 Neb. 417, 19 N. W. 467; Moseman v. State, 59 Neb. 629, 81 N. W. 853; Elliott's Ap. Prac. § 318.

Other errors are assigned in the brief of counsel for defendants, but both in the assignment of errors and the brief they are presented in total disregard of the rules of this court; and in so far as we are able to discern their purport they are too inconsequential to affect the result.

It results that the judgment of the District Court must be affirmed.