### BIRCHER v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 3, 1909.)

#### No. 1,593.

PUBLIC LANDS (§ 21*)—WRONGFUL INCLOSURE—STATUTES—CONSTRUCTION—INDICTMENT—"MADE."

Act Cong. Feb. 25, 1885, c. 149, § 1, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524), declares illegal all inclosures then or thereafter made, erected, or constructed on lands to any of which the person making or controlling the inclosure had no claim or color of title or asserted right at the time when the inclosure was made, and also declares unlawful "the maintenance, erection, construction or control of any such inclosure." *Held*, that the word "made," as so used, had a more comprehensive meaning than the words "constructed" or "erected," that a person "makes" an inclosure so long as he maintains it, and that since the statute was therefore violated, where a person maintained the inclosure of land to which he had no claim, color of title, or asserted right, an indictment charging such an inclosure was not defective for failure to allege that, at the time the inclosure was made, defendant had no claim or color of title to the land made or acquired in good faith or a right thereto asserted with a view to entry.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 21.*

For other definitions, see Words and Phrases, vol. 5, pp. 4269, 4270.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the District of Montana.

The plaintiff in error was indicted and convicted under Act Feb. 25, 1885, c. 149, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524), for unlawfully maintaining an inclosure of government land. After describing the land, the indictment charged that the defendant "did wrongfully and unlawfully maintain and control and cause to be maintained and controlled by him, the said Emil Bircher, an inclosure of the said lands, consisting of a fence of posts and wires, which said fence then and there inclosed all of the said tract of land comprising an area of approximately 1,920 acres of land, said lands so inclosed as aforesaid being public lands of the United States. And he, the said Emil Bircher, at the time of so maintaining and controlling said fence and inclosure as aforesaid, has no claim or color of title made or acquired in good faith, or an asserted right to said lands by or under claim made in good faith with a view to entry thereof at the proper land office under the general laws of the United States to said lands, or any part or parcel thereof."

The statute under which the indictment was found is as follows:

"Section 1. That all inclosures of any public lands in any state or territory of the United States heretofore or to be hereafter made, erected, or constructed by any person, party, association, or corporation, to any of which land included within the inclosure the person, party, association, or corporation making or controlling the inclosure had no claim or color of title made or acquired in good faith, or an asserted right thereto by or under claim made in good faith with a view to entry thereof at the proper land office under the general laws of the United States at the time any such inclosure was or shall be made, are hereby declared to be unlawful, and the maintenance, erection, construction, or control of any such inclosure is hereby forbidden and prohibited; and the assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States in any state or any of the territories of the United States without claim, color of title, or asserted right as above specified as to inclosure is likewise declared unlawful and hereby prohibited."

Geo. W. Myers and Walsh & Nolan, for plaintiff in error.

James W. Freeman, U. S. Atty., and S. C. Ford, Asst. U. S. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). No objection was raised to the indictment for any defect therein until after a verdict of guilty had been returned against the plaintiff in error. Then a motion in arrest of judgment was interposed, and the question now presented on the writ of error is whether or not that motion should have been allowed on the ground that the indictment failed to state an offense against the United States. It is the contention of the plaintiff in error that the indictment is fatally defective in omitting to charge that, at the time when the inclosure was made, the plaintiff in error had no claim or color of title to the land made or acquired in good faith, or an asserted right thereto by and under claim made in good faith with a view to entry thereof, and that the intention of the statute, as indicated by its language, is to denounce a penalty against those only who, at the time when the inclosure was made by them, had neither claim nor asserted right to the lands included therein. If this objection is well taken, it is very clear that Congress, by an unfortunate misuse of words, has failed to express the real intention of the act. The title of the act (Act Feb. 25, 1885, c. 149, 23 Stat. 321 (U. S. Comp. St. 1901, p. 1524) is "An act to prevent unlawful occupancy of public lands." One of its sections authorizes the President to take such·

measures as shall be necessary to remove and destroy any unlawful inclosure of any of such lands, and to employ such civil and military force as may be necessary for that purpose. The obvious intention of the statute was to make unlawful any exclusive use and occupancy of any of the public lands without claim or color of title, or asserted right under the land laws, whether by inclosing the same or otherwise.

The first clause of section 1 declares unlawful all inclosures "then or thereafter made, erected or constructed of lands to any of which the person making or controlling the inclosure had no claim or color of title or asserted right at the time when the inclosure was or shall be made," and the second clause declares unlawful "the maintenance, erection, construction or control of any such inclosure." What inclosure? Does it mean an inclosure of lands to which the person maintaining the inclosure had no claim or color of title or asserted right, or does it mean an inclosure of land to which the person maintaining the inclosure had no such right or title at the time when the inclosure was erected? We think it means the former. To hold otherwise is to ignore the spirit and purpose of the statute and to disregard the reasonable construction of its words. Could it be said that one who has acquired a color of title to land which had been inclosed by his grantor without color of title could be indicted under the act for the reason that he had no such claim or color of title when his grantor constructed the fence? Obviously not, and yet, under the words of the statute as counsel for the plaintiff in error construe them, he would be subject to the penalty denounced by the act.

The statute describes two classes of acts with reference to the public lands: First, the act of erecting or constructing an inclosure thereof; second, the act of maintaining such inclosure. And the test of the criminality of either class of acts is whether the person who committed the act had, at the time of committing it, color or claim of title, or asserted right under the land laws. It makes punishable the act of unlawfully inclosing the government lands, and it makes punishable the act of unlawfully maintaining an inclosure, whether the person maintaining the same was the person who erected it, or whether, at the time when it was erected, it was erected with or without authority of law. The word "made," as used in the statute, when construed in the light of the subject-matter, has a more comprehensive meaning than the words "constructed" or "erected." In a certain sense one who maintains an inclosure makes an inclosure, and as long as he maintains it he makes it. If we are to follow the very words of the statute, we are authorized, from the underlying purpose thereof, its context, and its scope, to say that the word "made" was used in this comprehensive sense, and that, with reference to the second clause of the section, it means also maintained.

We do not overlook the general rule that the intention of the Legislature is to be gathered from the words which they employ, and that while a case may fall within the mischief to be remedied, and in the same class therewith, still, if it be not within the words of the statute, construction will not be permitted to bring it therein. What we hold is that the language used authorizes us to determine that the of-

592 169 FEDERAL REPORTER.

fense charged against the plaintiff in error is within the intention of the statute.

In American Fur Co. v. United States, 2 Pet. 358–367, 7 L. Ed. 450, it was held that a construction which will sanction a glaring evasion of the whole policy of the law ought in no case be adopted unless the natural meaning of the words of the act require it. Said the court:

"Even penal laws, which it is said should be strictly construed, ought not to be construed so strictly as to defeat the obvious intention of the Legislature."

In United States v. Morris, 14 Pet. 464–475, 10 L. Ed. 543, Chief Justice Taney said:

"In expounding a penal statute, the court certainly will not extend it beyond the plain meaning of its words, for it has been long and well settled that such statutes must be construed strictly. Yet the evident intention of the Legislature ought not to be defeated by a forced and over-strict construction."

In United States v. Lacher, 134 U. S. 624–628, 10 Sup. Ct. 625, 33 L. Ed. 1080, this principle of construction was reaffirmed.

In Camfield v. United States, 66 Fed. 103, 13 C. C. A. 361, Judge Thayer, for the Circuit Court of Appeals, said:

"Section 1 of the act of February 25, 1885, supra, declared, in effect, that it should thereafter be deemed unlawful for any person, association, or corporation to make or maintain an inclosure which embraced within its limits any public land of the United States, to which the person making or maintaining the inclosure had no claim or color of title and to which he asserted no right under a claim made in good faith," etc.

In Krause v. United States, 147 Fed. 442, 78 C. C. A. 642, the same court, in passing upon the sufficiency of an indictment under section 1 of the act, which charged the defendant with maintaining and controlling a fence and inclosure of public lands "then and there having no claim or color of title to any of said lands, or any asserted right thereto," etc., said:

"This clearly enough charges the offense of maintaining and controlling an inclosure of public lands within the prohibition of the statute."

The case of United States v. Churchill (D. C.) 101 Fed. 443, cited by the plaintiff in error, decided on demurrer to an indictment, seems to express a contrary view of the statute; but, as the case is reported, we are not advised of the reasoning on which the conclusion was reached, nor of all the allegations of the indictment.

We are of the opinion that there is no error in the judgment of the lower court, and that it should be affirmed.