# UNITED STATES

*v.*

# VICENTE BALBAS CAPO.

---

San Juan, Criminal, No. 673.

### RE JOINDER OF OFFENSES UNDER ESPIONAGE ACT.

Criminal Law—Joinder of Counts.

 1. The question of joinder is one of judicial discretion, and is a subject of review where improvidently exercised.

Espionage Act—Subjects.

 2. The Espionage Act embraces many subjects having no relation to each other except a general bearing upon the war with Germany. An indictment for several offenses is to be construed in connection with Revised Statutes, § 1024.

Espionage Act—Counts.

 3. Each count is theoretically a separate indictment, and a general verdict is proper if any count is good, but separate punishments are lawful on the several counts. Sentences may be successive.

Joinder of Counts—Embarrassment to Defendant.

 4. The discretion of the court as to joinder must be exercised so that consolidation will constitute no embarrassment to the defendant in preparing his case. Offenses connected together and of the same class may be joined.

Counts—Allegation of Falsity.

 5. An allegation that statements are false is sufficient.

Espionage Act—Causing Insubordination.

 6. Allegations which cause insubordination or disloyalty need not be false in order to be indictable. Statements with intent to interfere with the success of the forces must be shown to be false.

---

NOTE.—Authorities passing on the decisions under the Espionage Act of June 15, 1917, are collated in a note in L.R.A.1918F, 410.

United States v. Capo.

War Legislation—In Pari Materia.

> 7. The different statutes constituting the war legislation are to be construed in pari materia. Discretion of the Postmaster as to excluding ·disloyal publications from the mail cannot ordinarily be revised by the courts. Legislation on the subject of war is as constitutional as legislation on commerce or any other subject. The Constitution grants clearly the full exercise of war powers and within their sphere these are paramount. There is but one way of waging war and that is to make it the supreme business of the state, in battle and in all spheres of activities. A Democratic legislature may enact laws to be carried out by forcible measures for war purposes. This principle does not prejudge the question of innocence of a particular defendant. Some discussions proper in times of peace are objectionable in times of war.

Opinion filed November 28, 1917.

---

*Messrs. Miles M. Martin,* District Attorney, and *Geo. S. Brengle* for the United States.

*Mr. H. G. Molina* for motion to quash and demurrer to indictment.

HAMILTON, Judge, delivered the following opinion:

This is an indictment returned November 22, 1917, by the grand jury against the defendant under § 3 of the Espionage Act approved June 15, 1917, and consisting of six counts. The first three counts relate to the alleged publication in the Heraldo de las Antillas at San Juan by the defendant on October 27, 1917, while the United States were at war with the German Empire, of an article on the subject of "Recruiting in Porto Rico," alleging discrimination against this territory. The respective counts charge that the statements are false and (1)

made with the intent to interfere with the operation and success of the military and naval forces of the United States; (2) that the article was published with the intent to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States; and (3) that the object was to obstruct the recruiting and enlistment service of the United States. The remaining counts relate to an alleged publication by said defendant on November 10, 1917, of an article called "The Topic of the Day," alleging amongst other things that the Porto Ricans were made citizens in order to force them into the American Army, and that even those renouncing citizenship were to be forced into military service. These last three counts charge that the article was published with the intent (4) to interfere with the operation and success of the military and naval forces of the United States; (5) to cause insubordination, disloyalty, mutiny, and the refusal of duty in the said forces; and (6) to obstruct registration and enlistment in the service of the United States.

The defendant before pleading moves to quash the indictment, and, if that is denied, substantially the same grounds are presented with others in the shape of a demurrer.

On the hearing the government consented to strike out the fourth count, there being by oversight no allegation therein of falsity. The case, therefore, is to be considered upon the propriety of the joinder vel non of the other counts.

The government contends that the counts are properly joined under Revised Statutes, § 1024, Comp. Stat. 1916, § 1690, which is as follows: "When there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts

or transactions of the same class of crimes or offenses; which may be properly joined, instead of having several indictments the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

1. It is conceded that the question of joinder is within the discretion of the court. The court can determine whether the prosecution shall be required to elect, or whether the defendant must go to trial upon all the counts. Rooney v. United States, 122 C. C. A. 230, 203 Fed. 928; United States v. Eastman, 132 Fed. 551. The discretion, however, is a judicial discretion and is the subject of review where it has been improvidently exercise. Gardes v. United States, 30 C. C. A. 596, 58 U. S. App. 219, 87 Fed. 172.

2. All counts are conceded to be brought under § 3 of the Act approved June 15, 1917, to punish espionage and for other purposes. This section reads as follows: "Whoever, when the United States is at war, shall wilfully make or convey false reports or false statements with intent to interfere with the operation or success of the military or naval forces of the United States or to promote the success of its enemies and whoever, when the United States is at war, shall wilfully cause or attempt to cause insubordination, disloyalty, mutiny or refusal of duty in the military or naval forces of the United States, or shall wilfully obstruct the recruiting or enlistment services of the United States, to the injury of the service or of the United States, shall be punished by a fine of not more than $10,000 or imprisonment for not more than twenty years, or both." [40 Stat. at L. 219, chap. 30, Comp. Stat. —, § 10,212c.]

The whole act is divided into thirteen titles covering many

subjects, the first being espionage, the twelfth use of the mails, and the thirteenth general provisions. The subjects have no relation to each other except that they have a general bearing upon the present war with Germany. The allegations of the five counts in question are all under title I. The first three charge different offenses growing out of the publication of October 27, 1917, and the last three, now last two, charge offenses growing out of the publication of November 10, 1917. The section in question seems to relate to three different subjects, or possible subjects, coming under the general head of espionage while the United States are at war. These three phases may be classified as: (1) Making false statements with the intent to interfere with the operation or success of the forces of the United States; (2) causing in subordination, disloyalty, mutiny, or refusal of duty in those forces; and (3) wilfully obstructing the recruiting or enlistment service of the United States to its injury. Whoever, when the United States are at war, shall wilfully do any of these three things or classes of things, shall be punished under this section by fine and imprisonment. This indictment charges an offense under each of these phases in regard to the two different publications set out in the indictment, the net result therefore being that there are three offenses charged under the first publication and two under the second. Can there be such a joinder of offenses under the Revised Statutes, § 1024, Comp. Stat. 1916, § 1690?

3. The test is not the fact that the charges or acts alleged are severable, for the section in question distinctly recognizes that they are separate. It is a question of proper joinder, and this is permitted where (1) the several charges are against one person for the same act, (2) against him for two or more acts connected

United States v. Capo.

together, and (3) for two or more acts of the same class of
offenses. United States v. Jones, 69 Fed. 973. The decisions
under this section cover a number of phases. Thus, two mur-
derers committed on the same day, in the same district, and
with the same kind of instrument, may be joined. Pointer v.
United States, 151 U. S. 396, 38 L. ed. 208, 14 Sup. Ct. Rep.
410. The difference of punishment is not conclusive. Hartman
v. United States, 94 C. C. A. 124, 168 Fed. 30. The same is
true where the counts differently charge the defendants as
principal and abetters. Rooney v. United States, supra. A
joinder of counts is proper where one relates to feloniously tak-
ing away property and another to such taking of metal from the
mint. United States v. Jones, supra. So, where the offense in
one count is alleged to be on one date and in another count is
alleged to have been on another date a month later. Distinct
felonies of different grades may be joined. United States v.
Bickford, 4 Blatchf. 337, Fed. Cas. No. 14,591. So, one count
may charge the presenting of a false claim and another causing
the use of a false affidavit in its support. Ingraham v. United
States, 155 U. S. 434, 39 L. ed. 213, 15 Sup. Ct. Rep. 148.
Each count in an indictment is in fact and theory a separate
indictment, and different counts therefore necessarily import
different offenses. United States v. Davenport, Deady, 264,
Fed. Cas. No. 14,920; United States v. Malone, 9 Fed. 897.
Separate indictments may be consolidated where they charge
conspiracy to fraud the United States, embezzlement, and pre-
senting false claims, and where all the acts relate to misappro-
priation of a national fund to be expended in a specified way.
United States v. Greene, 146 Fed. 781. On the other hand,
indictments against different persons cannot be consolidated

where the offenses are separate and distinct, committed at different times, and not proved by the same evidence. McElroy v. United States, 164 U. S. 76, 41 L. ed. 355, 17 Sup. Ct. Rep. 31. When there is a proper consolidation the challenges of the defendant are not enlarged. Krause v. United States, 78 C. C. A. 642, 147 Fed. 442. A general verdict is proper if any count is good. United States v. Stone, 8 Fed. 232. Separate punishments are lawful on the several counts. United States v. Bennett, 17 Blatchf. 357, Fed. Cas. No. 14,572. And these sentences may be successive, although there is no statute of the United States on the subject. Re Greenwald, 77 Fed. 590; Ex parte Peters, 4 Dill. 169, Fed. Cas. No. 11,027, s. c. 2 McCrary, 403, 12 Fed. 461.

4. The principle seems to be that the discretion of the court must be exercised so that the consolidation will work no confusion or embarrassment to the defendant in preparing his case. Pointer v. United States, 151 U. S. 396, 38 L. ed. 208, 14 Sup. Ct. Rep. 410; Gardes v. United States, 30 C. C. A. 596, 58 U. S. App. 219, 87 Fed. 172. The case at bar seems to relate to alleged offenses which are connected together and which are of the same class of crime under Revised Statutes, § 1024, Comp. Stat. 1916, § 1690. It is not necessary for the court to invoke the principle of judicial knowledge in regard to the nature of these and similar editorials during the past few years. It was conceded on the argument by both sides that the two articles now under discussion were and are a part of a long propaganda conducted by the defendant and others seeking to secure the independence of Porto Rico. These articles, therefore, need not be copied in detail. They are of the same general nature and connected in principle **and in fact.** It follows that the counts in

question can be joined under the statute. If upon the trial the evidence seems to show that this joinder works injury to the defendant the court can and will at that time direct an election. Pointer v. United States, supra.

The motion to quash must therefore be denied.

The demurrer also avers that the counts are improperly joined, and to this extent must be overruled under the principles above set out.

5. The demurrer further says that the specific statements alleged to be false in the first three counts are not set out. The allegation, however, is that the statements in the first article are false. Whether this means that every single allegation in the article must be proved to be false before there can be a conviction, or whether it means that the substantial and more important allegations must be so shown need not now be decided. The indictment is that the statements are false and that is sufficient. Proper interpretation of this allegation may be a matter for discussion upon the trial itself.

6. The demurrer further sets out that the indictment does not allege that the statements referred to in the last three counts now the last two counts, are false. Under § 3 of the Act of June 15 it does not seem that this is necessary. The provision as to statements with the intent to interfere with the success of the forces is that these must be false in order to offend the section, but wilful allegations which cause insubordination or disloyalty or which obstruct the recruiting or enlistment service do not need to be false to come within the purview of this section. It might very well be that a statement perfectly true in itself could be used in such a connection as to interfere with the military service of the United States and do just as much harm

as if it were false. This is somewhat analogous to the law of libel. While in a civil case sometimes truth is a defense to an alleged libel, in a criminal prosecution for the offense of libel it is an old principle that sometimes the greater the truth the greater the libel, that is to say, that a true statement may tend to cause a breach of the peace or other public injury just as much as a false statement. However, whatever may be the principle involved, § 3 itself draws a distinction between the three classes of offenses covered. It is sufficient to hold that the offenses covered by the last two counts of the indictment do not require that the statements shall be alleged to be false.

7. As might be expected, there is a dearth of decisions on the legislation growing out of the present condition of war with Germany. The legislation is too recent and some of its provisions are of a nature which prevent early action by the courts. The principal acts in question are that called the National Defense Act, approved June 3, 1916, and that approved May 18, 1917, for the temporary increase of the military establishment, covering much the same subject but going further in its provisions than the act now under consideration generally called the Espionage Act, approved June 15, 1917, and also that relating to trading with the enemy, approved October 6, 1917. These and other acts relate to different subjects, but are to be construed as in pari materia. Decisions have been rendered on the National Defense Act by the circuit court of appeals for the second circuit in the case of Angelus v. Sullivan, 158 C. C. A. 280, 246 Fed. 54, by the district court for the southern district of California in the habeas corpus case of Ex parte Larrucea, 249 Fed. 981, and by the District court for the southern district of New York in United States, ex rel. Koopowitz v. Fin-

ley, 245 Fed. 871, beside briefer decisions elsewhere. The espionage Act is covered in a charge by the court in the district court for South Dakota in the case of United States v. Doll, and at greater length in the well-considered opinion by the circuit court of appeals for the second circuit in the case of the Masses Pub. Co. v. Patten, 157 C. C. A. 394, 245 Fed. 102. None of these cover the subject now before this court, although they relate to, the general subject of war legislation. In the Masses Case it is held that the Postoffice Department can exclude a radical and revolutionary publication which opposes war, and concludes that, although insurrection is not urged, the periodical tends to cause disloyalty in the military or naval forces of the United States and to obstruct the enlistment service. The main ground of decision, however, is that discretion is left in this matter to the Postoffice authorities, and that this discretion cannot ordinarily be revised by the courts. In the case at bar it was stated upon the argument that the Postmaster at San Juan had excluded the second of the two articles from the mails, but that does not decide this case. The question before the court is not whether the articles are properly excluded from the mails, but whether they are criminal under the recent war legislation.

The merits of the case of course do not come up on demurrer, but this much may be said. Legislation on the subject of war is as constitutional as legislation on commerce or other matters of peace. Congress is given the power by the Constitution to declare war and raise and equip armies and navies, and the President is made Commander in Chief. These grants clearly suppose the full exercise of what are known as war powers, and it must be held that these war powers within their sphere are

paramount. When they are properly called into exercise every-
thing opposing them must for the time being give way. In a
proper case the Revised Statutes, §§ 751–766, Comp. Stat.
1916, §§ 1279–1292, even provide that habeas corpus may be
suspended, and this is the guaranty of the exercise of many con-
stitutional rights. There is but one way of waging war, and
that is to make it the supreme and exclusive business of the
state, not only actually on the field of battle, but potentially in
all spheres of economic activity. War is not carried on for any
casual purpose, but for the definite object of conquering the
enemy, and everything at home or abroad that properly tends
to that end must be upheld as a part of the war power. For this
reason the court is prepared to uphold this legislation to its full
extent in all proper cases. The question of autocracy and
democracy does not arise in the execution of war legislation; it
arises only in the enactment of war legislation. If a Democratic
legislature enacts legislation which is to be enforced by forcible
measures for war purposes, it is constitutional, and it will be
enforced. In such measures and in such times the presumption
is in favor of the constitutionality of legislation; in fact this
applies even more to war legislation than to any other, because,
unless it is to be effective it is worse than useless. Salus populi
suprema lex is as true under the American Constitution as
under the Roman Twelve Tables. If war measures are not suc-
cessful there is an end of civil liberty.

This by no means prejudges the case at bar. The law may be
constitutional, but the question always is whether the acts of
the defendant are such as to violate that law. While the pre-
sumption, on the one hand, as that the legislation is constitu-
tional, the presumption, on the other hand, is that the individual

United States v. Capo.

is not guilty of the offense denounced. Delicate questions will arise as to the line between the civil rights of the individual and the war rights of the nation. In the case at bar it will be necessary to determine amongst other things the extent of the freedom of the press under the present war legislation, the rights of a Porto Rican editor who has declined American citizenship, when addressing Americans of Latin origin, whom for years he has been influencing, to determine also whether the discussion in war times of such subjects as the possible independence of Porto Rico does or does not violate the Espionage Act, and whether the terms in which the defendant advocates this in the articles in question tend to an illegal result. It is unquestionably true, as said by the President, that some discussions which would be proper in times of peace are objectionable in times of war. But these matters should be determined when the facts are fully before the court on the evidence. Judicial knowledge must be sparingly used in criminal cases.

As to the motion and demurrer now before the court, however, the court is clear. The motion is refused and the demurrer is overruled.

It is so ordered.