(December 16, 1901.)

## STATE v. RATHBONE.

### [67 Pac. 186.]

INFORMATION—DESCRIPTION OF STOLEN PROPERTY.—Where the information charges larceny in the felonious taking of two mares, it is sufficient.

CRIMINAL LAW—BILL OF PARTICULARS.—The prosecuting officer is not required to furnish a bill of particulars. It is not a statutory right and is discretionary with the trial court.

VERDICT—CONFLICT OF EVIDENCE.—Where there is a substantial conflict in the evidence, the action of the trial court will not be disturbed.

CRIMINAL LAW—INSTRUCTIONS.—Where the trial court fully and fairly instructs the jury on all the issues involved, it is not error to refuse to give instructions requested by defendant involving the same questions.

(Syllabus by the court.)

APPEAL from District Court, Lincoln County.

Hawley & Puckett and John W. Hobbs, for Appellant.

An indictment should be direct and certain as to the offense charged and the particular circumstances when they are necessary to constitute a complete defense. (*People v. Saviers,* 14 Cal. 29.) The indictment should set forth the facts and circumstances of the alleged offense, so that the accused may be prepared for his defense. (*People v. Hood,* 6 Cal. 236; *People v. Wallace,* 9 Cal. 30.) Defendant's motion for bill of particulars should have been allowed. (Wharton's Criminal Procedure

and Practice, 8th ed., 702 et seq.; *Rex v. Hodson,* 3 Car. & P. 422; *Rex v. Bootyman,* 5 Car. & P. 300; *Rex v. Downing,* 4 Ad. & E. 699; Wharton's Criminal Pleading and Practice, 8th ed., p. 464, note 1.) In a criminal case, a bill of particulars is required whenever the indictment fails to give notice of the special matter intended to be proved. (*Williams v. Commonwealth,* 91 Pa. St. 493; *Commonwealth v. Snelling,* 15 Pick. 329; *People v. Bellowes,* 1 How. Pr. 149; *People v. McKinley,* 10 Mich. 54.) A prosecutor cannot maintain larceny for goods taken from him with his consent. It is necessary for the prosecution to prove want of consent. (*State v. Moon,* 41 Wis. 684; *Witt v. State,* 9 Mo. 671; *Anderson v. State,* 14 Tex. App. 49; *Wrestle v. State,* 14 Tex. App. 175; *Wilson v. State,* 45 Tex. 76, 23 Am. Rep. 602; *People v. Murphy,* 47 Cal. 103.) "There can be no doubt that in an indictment or information for larceny, where the stolen property is not otherwise described so as to identify the offense, the allegation of ownership is a material part of the description of the offense charged." (*People v. Wallace,* 94 Cal. 497, 29 Pac. 950.) To the same effect are: *People v. Hughes,* 41 Cal. 234; *Clark v. State,* 29 Tex. App. 437, 16 S. W. 171; *Sharp v. State,* 29 Tex. App. 211, 15 S. W. 176; *McDowell v. State,* 68 Miss. 348, 8 South. 508; *People v. Hall,* 19 Cal. 425; Bishop's Criminal Procedure, 3d ed., 718, 723, 752, 4886; *Allen v. State,* 42 Tex. 517; *Murray v. Trinidad Nat. Bank,* 5 Colo. App. 359, 38 Pac. 615; *Chavez v. Territory,* 6 N. Mex. 455, 30 Pac. 903; *Heber v. State,* 7 Tex. 69; *Poag v. State,* 40 Tex. 151; *Burke v. State,* 25 Tex. App. 172, 7 S. W. 873; *Harwell v. State,* 22 Tex. App. 251, 2 S. W. 606; *Childers v. State,* 37 Tex. Cr. Rep. 392, 35 S. W. 654.

Attorney General Frank Martin, for the State.

The information in the case at bar states: "That one Ernest Rathbone, on the fourteenth day of August, A. D. 1900, in the county of Lincoln, and state of Idaho, did then and there feloniously steal, take and drive away two mares, the personal property of another." This would seem sufficiently direct and certain to enable the defendant to prepare for his trial, and to know what he is to meet. (*People v. Littlefield,* 5 Cal. 355.)

The words used in the information in this case charges the offense in almost the identical language of the statute, which is usually sufficient. (*People v. Butler,* 1 Idaho, 231; *State v. Ellington,* 4 Idaho, 529, 43 Pac. 60; *People v. Russell,* 81 Cal. 617, 23 Pac. 418; *State v. McGaffin,* 36 Kan. 315, 13 Pac. 560.) Our statute makes no provision for the defendant being furnished a bill of particulars in a criminal case. An information or indictment under our statute is required to state the offense in ordinary and concise language, and with such definiteness that the defendant may know the exact charge that he is to meet. Such practice is unknown in states with a criminal code similar to ours. And in states where, under the statutes, the court may make an order for a bill of particulars, the granting or refusing of such an order is solely within the discretion of the trial court. (*People v. Tweed,* 63 N. Y. 194; *Tilton v. Beecher,* 59 N. Y. 176, 17 Am. Rep. 337; *People v. Alviso,* 55 Cal. 232.) The next error assigned by appellant is the refusal of the court to grant a new trial upon the insufficiency of the evidence. We think that an examination of the evidence in this case sufficiently shows that the animals in question were stolen; that they were taken from the range in Lincoln county where they were running, and shipped out of the country without the consent or authority of the owner. The supreme court of California, in passing upon this question, used the following language: "It is not necessary to allege in the indictment or information for larceny that the property was taken against the will of the owner. Consent of the owner to the taking is matter simply of defense, and need not be averred or proved by the prosecution." (*People v. Davis,* 97 Cal. 194, 31 Pac. 1109; *State v. Haverly,* 4 Idaho, 484, 42 Pac. 506; *Chamberlain v. Woodin,* 2 Idaho, 642, 23 Pac. 177; *Smith v. Thomas,* 121 Cal. 533, 54 Pac. 71; *People v. Un Dong,* 106 Cal. 83, 39 Pac. 12; *People v. Lewis,* 124 Cal. 551, 57 Pac. 470; *Simpson v. Remington,* 6 Idaho, 681, 59 Pac. 360.) Section 7683 of the Revised Statutes of Idaho is as follows: "When an offense involves the commission of, or an attempt to commit, a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the per-

son injured, or intended to be injured, is not material." (*People v. Smith,* 112 Cal. 333, 44 Pac. 663; *People v. Prather,* 120 Cal. 660, 53 Pac. 259; *People v. Watson,* 72 Cal. 402, 14 Pac. 97; *Commonwealth v. Buckley,* 148 Mass. 27, 18 N. E. 577, 1 L. R. A. 624.) When one takes the stock of another to feed or pasture for the owner, and it is stolen from his possession, the ownership of the property may be alleged in the one from whose possession it was taken. (*People v. Buelna,* 81 Cal. 135, 22 Pac. 396.)

STOCKSLAGER, J.—The county attorney of Lincoln county charged defendant with the crime of grand larceny. After the usual allegations, the information charges that one Ernest Rathbone, on the fourteenth day of August, 1900, in the county of Lincoln, and state of Idaho, did then and there feloniously steal, take, and drive away two mares, the personal property of another, to wit, the personal property of George M. Brown, all which is contrary to the form of the statutes, etc. Counsel for defendant demurred to this information, alleging: "1. Said information does not state a public offense. 2. Said information does not substantially conform to the requirements of section 7679 of the Revised Statutes, in that the said information is not direct and certain in regard to the offense charged, and more particularly for the reason that it does not give a particular description, or any description, of the animals alleged to have been stolen. 3. Said information does not substantially conform to the requirements of section 7678 of the Revised Statutes of Idaho, in this: that it does not contain a statement of the facts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended, and more particularly in that said information does not give any description of the animals therein alleged to have been stolen by defendant, or either of them. 4. More than one offense is charged in the information herein, in that two mares are alleged to have been stolen, and that the stealing of each of said mares, if they were stolen at all, was a separate and distinct offense." This demurrer was overruled by the court, which is assigned as error.

The defendant demanded a bill of particulars from the county attorney, which was refused by said officer, whereupon he filed his motion, supported by affidavit, and presented it to the court, to wit: "Comes now the defendant herein and moves the court for an order requiring the county attorney of Lincoln county, Idaho, the prosecutor herein, to give and furnish the defendant with a particular description of the mares, and each of them, charged in the information to have been stolen by the defendant." This motion was denied by the court, which is assigned as error.

The defendant then moved to set aside the information, based upon the following grounds: "a. Defendant has never had a preliminary examination upon the offense charged in the information, and has never been held upon said charge to answer before this court. b. At a preliminary examination had before W. J. Smith, justice of the peace, of Shoshone precinct, in said Lincoln county, state of Idaho, on January 11, 1901, said preliminary examination being the basis and foundation of this prosecution, and the so-called depositions therein having been filed in this court upon January 14, 1901, the depositions of the several witnesses examined thereat, to wit, George M. Brown, J. D. McCoy, and Vance L. Stowell, said persons being all of the witnesses examined at said preliminary examination, were not read to said witnesses, or to either or any of them, and corrected or added to, until such depositions conformed to what said witnesses, or either or any of them, declared to be the truth. c. That none of the depositions taken at said hereinbefore mentioned preliminary examination were or are certified to by the said magistrate. d. That said magistrate did not indorse upon the depositions taken at said preliminary examination an order of commitment." This motion was denied by the court, and is alleged as error.

Thereafter a trial was had, and on the tenth day of April, 1901, the jury returned a verdict finding the defendant guilty as charged in the information. On the twelfth day of April, 1901, the defendant was sentenced to a term of seven years in the penitentiary of the state. The defendant appeals to this court from the judgment of the trial court, and also from the order of said court overruling his motion for a new trial.

The first error alleged and urged is the ruling of the court upon the demurrer to the information. The information charges the defendant with the larceny of two mares, the property of George M. Brown. Counsel for appellant urges that this description is not sufficient to enable a person of common understanding to know what is intended. In defining grand larceny, section 7048, subdivision 3, of our statute says: "When the property taken is a horse, mare, gelding," etc. Our attention is called to *People v. Saviers,* 14 Cal. 29. The syllabus says: "Under our law an indictment is good if it state the acts constituting the offense in ordinary and concise language, and in such a way that a person of ordinary understanding can know what was intended. Where a statute introduces a new offense, without reference to anything else, an indictment describing the offense in the words of the statute is sufficient. The offense here is dealing monte for money. This alone constitutes the crime." The indictment charged that George Saviers, on or about the twenty-third day of February, 1859, did at the county of Placer, etc., at the house known as "Tyne's Hall," in the town of Dutch Flat, willfully, unlawfully, and feloniously deal the game of monte, then and there played for money. In delivering the opinion of the court, Mr. Justice Baldwin says: "It would be very difficult to give the act of 1857 any effect if we recognized the proposition of appellant's counsel; for how full and explicit must be the description of the offense, and how many of the circumstances bearing a relation to it must be stated? If the room is to be described, how full must be the description? If a person betting must be named, must not all bettors be named, and all spectators, too? And if a variance should occur in any of these particulars, would not the defendant be entitled to an acquittal? We think these matters have nothing to do with the essence of the offense, which is the playing for money at the place specified and about the time." *People v. Hood,* 6 Cal. 236, to which our attention is called, says: "The indictment in this case charges the accused of the crime of arson in this: 'That on a certain day,' etc., 'he did burn or cause to be burned a certain dwelling-house,'" etc. Mr. Justice Murry, in the opinion, says: "This is not a sufficient description

of the offense—1. Because the charge is laid in the alternative, whereas it should be special; and 2. Because the facts and circumstances of the alleged offense are not set forth in such a manner as to apprise the prisoner of the offense charged against him, so that he may be prepared for his defense." In *People v. Wallace,* 9 Cal. 30, it is said: "An indictment must contain a statement of the facts constituting the offense charged against the defendant." In *People v. Littlefield,* 5 Cal. 355, it is said: "Under section 247 of the Compiled Laws, no indictment shall be deemed insufficient; nor shall the trial judgment, or other proceeding thereon, be affected by reason of any defect or imperfection in matters of form which shall not tend to the prejudice of the defendant. It would be sufficiently certain under the statute that the indictment should charge the defendant with feloniously taking three head of cattle, without showing the particular species of cattle taken. The defendant could not be prejudiced in this cause by language of this character." *People v. Russell,* 81 Cal. 616, 23 Pac. 418, holds that an information or indictment drawn substantially in the language of statute which defines the offense is sufficient. In *State v. McGaffin,* 36 Kan. 315, 13 Pac. 560, the supreme court of Kansas holds that as a general rule it is sufficient if an indictment or information charges an offense in the language of the statute, and even the statutory words need not be strictly pursued, but others conveying the same meaning may be used. In *State v. Ellington,* 4 Idaho, 529, 43 Pac. 60, this court said: "Where, as in Idaho, the statute defines what shall constitute murder, an indictment which sets forth the crime in the language of the statute is sufficient." Under these authorities was the lower court in error when it overruled defendant's demurrer to the information? Our statute makes the felonious taking of a horse, mare, gelding, etc., grand larceny. The information charges the felonious taking of two mares in the language of the statute, and that they were the property of George M. Brown, and feloniously taken from the range in Lincoln county. This, we think, was sufficient to inform the defendant what charge he had to meet. We find no error in the order of the court overruling defendant's demurrer to the information.

The next assignment of error is the ruling of the court on "defendant's motion for bill of particulars." In support of this contention learned counsel calls our attention to Wharton's Pleading and Practice, ninth edition, 702. The author says: "Whenever the indictment is so general as to give the defendant inadequate notice of the charge he is expected to meet, the court on his application, will require the prosecution to furnish him with a bill of particulars of the specific charge to be pressed, or the evidence intended to be relied upon. That indictments may be thus general, and yet in entire conformity with precedent, has been heretofore abundantly shown. It is allowable to indict a man as a common barrator, or as a common seller of intoxicating liquors, or as assaulting a person unknown, or as conspiring with persons unknown to cheat and defraud the prosecutor by divers false tokens and pretenses; and in none of these cases is the time material, so that the defendant is obliged to meet a charge of an offense comparatively undesignated committed at a time not designated at all." Hence has arisen the practice of requiring in such cases bills of particulars, and the adoption of such bills, instead of the exacting of increased particularity in indictments, is productive of several advantages. It prevents much cumberous special pleading, and consequently, failure of justice, as no demurrer lies to bills of particulars; and it gives the defendant in plain, unartificial language notice of the charge he is to meet. In *Rex v. Hodgson,* 3 Car. & P. 422, to which our attention is called by counsel for appellant, it is said: "If a prisoner indicted for embezzlement does not know the specific acts of embezzlement intended to be charged against him, he should apply to the prosecutor for a bill of particulars of the charges; and, if it be refused, the judge will, on motion supported by proper affidavits, grant an order for such particulars to be given, and postpone the trial, if necessary. Such particulars ought at least to state the names of the persons from whom the money is alleged to have been received." *Rex v. Bootyman,* 5 Car. & P. 300, is to the same effect. In *Williams v. Commonwealth,* 91 Pa. St. 493, it is said: "An indictment which charges the crime substantially in the language of the act of assembly is sufficient under the Criminal Procedure Act of

1860. The accused may, however, apply to the court or a judge for an order for a bill of particulars, and on the trial the commonwealth will be restricted to the items specified." In simplifying indictments it was not the intendment to make their brief and comprehensive terms a cover for snares to be sprung on the accused. Whether a refusal to order the bill would be subject to review is a question not now raised. In *People v. McKinney,* 10 Mich. 54, it is said: "Such an order ought never to be refused when the court can see any reason to believe the particulars necessary to inform the defendant of the particular transactions or instances of embezzlement intended to be pressed against him, so as to enable him to meet them." In *Commonwealth v. Snelling,* 15 Pick. 329, it is said: "The power of this court to order a bill of particulars in a case proper for its application has been recognized by this court as one of the powers incident to its general authority in the administration of justice." In the case of *Tilton v. Beecher,* 59 N. Y. 181, 17 Am. Rep. 340, the court says: "It is not contended, on the part of the appellant and it would have been useless to contend, that the present application was founded upon legal right, or that it did not rest in the discretion of the court, nor that, if the order appealed from was the result of a fair exercise of that discretion, we should be asked to review it." This language is used with reference to an application for a bill of particulars. In *People v. Tweed,* reported in 63 N. Y. 199, the opinion says: "As to that portion of the order in relation to a bill of particulars, it is sufficient to say that it was a matter purely discretionary." In *Commonwealth v. Giles,* 1 Gray, 466, the syllabus says: "It seems that the question whether a bill of particulars or specification of facts shall be required is, in all cases, civil and criminal, exclusively within the discretion of the presiding judge." Owing to the fact that this is the first time this court has ever been called upon to determine the right of the defendant to demand a bill of particulars in a criminal case, we have carefully examined all the authorities to which our attention has been called. Our statute makes no provision for such demand, and all learned counsel for appellant claims is a legal right, not statutory. This being true, it would certainly be a matter of dis-

cretion in the trial court, and should never be disturbed, unless it is apparent that there has been a gross abuse of it. We find no error in the order of the court overruling appellant's motion for a bill of particulars.

The next assignment of error is that the evidence was insufficient to support the verdict, and that the trial court should have granted a new trial. Counsel for appellant says in his brief "that the evidence does not show the animals in question were stolen at all, or taken by defendant, or anyone else, without the authority of the owner thereof." George M. Brown testified he resided at Shoshone, and engaged in stock business—raising horses mostly; in riding the range in September and October discovered that most of his horses had gone off the range; went to Kamima, and was informed by the agent that a shipment of horses had been made by E. Rowles; followed the cars east; found some of his stock within three or four miles of New Richland, Minnesota—one roan mare, branded "G B" on the left shoulder, with quarter circle under "B," and another a light bay mare, branded a single "G B" on the left shoulder, with a strip in the face. "I traced them by taking the numbers of the cars off the R. R. Co.'s books at Kamima, Idaho, and traced them from there to New Richland. On arriving at New Richland, I hunted up the shippers—the man that had shipped the contents of those numbered cars that I was following. They took me and showed me this stock, with others, and these two particular animals. After I found these two horses, I returned home and caused Mr. Rathbone's arrest." James Wilson testified he had known defendant eight years; about the middle of August, Rathbone came to his place and hired him to drive some horses to the railroad at Kamima; gathered the horses west of his place, drove them to Kamima, and loaded them into cars; gathered them Sunday, August 12th, and on the 13th drove them to Kamima; has known George Brown for twelve years, and knows his brand; understands it to be "G B" on left shoulder, etc.; and says he (Brown) claims three different irons, and described them—one with a quarter circle under the "B"; the other, the necktie brand. "Among the animals I drove to Shoshone, I noticed a yellow mare with a 'G B' brand, and a roan

mare with a 'G B,' quarter circle under the 'B.'   I do not mean
a light bay, when I say yellow horse.   The roan mare, I believe,
with the 'G B,' quarter circle, as near as I can remember, had a
white face, or 'roaner' than the balance of her.   These horses
were driven from Lincoln county, Idaho."   The agent of the
railroad company at Kamima testified that the defendant
shipped horses (does not pretend to describe them) from Ka-
mima in the name of E. Rowles, on August 14th, consigned to
E. Rowles, at Butte, destination Duluth, Minnesota.   By this
evidence it is shown that the defendant was in the possession
of the property of Brown, and that the horses were gathered
from the range in Lincoln county, and shipped from Kamima
to Minnesota; that they were shipped in the name of E. Rowles,
and consigned to E. Rowles at their destination.

Counsel for appellant calls our attention to 2 Bishop's Crim-
inal Law, page 799, and note 1, on page 465, in support of his
contention.   The first citation says: "The somewhat technical
doctrine of this subtitle is that, simultaneously combining with
the intent to steal, every larceny requires a trespass in the as-
portation, sometimes with less precision of language termed a
'taking'—less fully expressed."   The rule—rather technical,
than resting on any clear reason, and not generally adapted to
modern needs, yet established by ancient and later usage past
overthrow—is that there can be no larceny without a trespass.
*State v. Moon,* 41 Wis. 684, holds that in prosecutions for lar-
ceny, if the owner of the property alleged to have been stolen is
known, and his attendance as a witness can be procured, his tes-
timony that the property was taken from him without his con-
sent is indispensable to a conviction.   In *Witt v. State,* 9 Mo.
672, it is said: "The felonious intent is the material ingredient
in the offense.   To constitute this offense, therefore, in any
form, there must be a taking from the possession, or conveying
away against the will of the owner, and a felonious intent to
convert it to the offender's use."   In support of this contention
learned counsel cite *Anderson v. State,* 14 Tex. App. 49; *Dresch
v. State,* 14 Tex. App. 175; *Wilson v. State,* 45 Tex. 76, 23 Am,
Rep. 602.   These three authorities support the contention of
appellant.   The supreme court of California (*People v. Davis,*

97 Cal. 194, 31 Pac. 1109) say: "It is not necessary to allege in the indictment or information for larceny that the property was taken against the will of the owner." Consent of the owner to the taking is matter simply of defense, and need not be averred or proved by the prosecution. In the case at bar it was shown on behalf of the prosecution that the witness, George M. Brown, was a half-owner in the property alleged to have been stolen, and that he followed it from Kamima, Idaho, to New Richland, Minnesota, and, after finding two mares that he testified were his, returned to Idaho and caused the arrest of defendant for the larceny of these horses. He was tried and convicted of this charge by a jury of his countrymen. We do not think the court erred in refusing to grant a new trial. (See *State v. Haverly,* 4 Idaho, 484, 42 Pac. 506; *Chamberlain v. Woodin,* 2 Idaho, 642, 23 Pac. 177; *People v. Lewis,* 124 Cal. 551, 57 Pac. 470, 45 L. R. A. 783; *Simpson v. Remington,* 6 Idaho, 681, 59 Pac. 360; *People v. Un Dong,* 106 Cal. 83, 39 Pac. 12.)

The next assignment of error is that there is a variance between the proof and the allegation of ownership as alleged in the information. It is true that the information charges the larceny of the two mares from George M. Brown, while the proof shows they were the property of George M. Brown and R. L. Brown. In support of this contention counsel for appellant cites us to *People v. Frank,* 1 Idaho, 200. In this case it is said by Mr. Justice Cummins, who delivered the opinion of the court: "In this case, as I have stated, it was averred that the property belonged to —— Whiteman. On the proof it appeared to be the property of M. Whiteman and one Arnheim doing business as partners, and that both were in and about the store where the goods were stolen." Mr. Justice McBride dissents from the views reached by the court in this case. In *Commonwealth v. Trimmer,* 1 Mass. 476, the indictment charged that "Philip Trimmer, Susanna Trimmer, the wife of said Philip, and Patience Whitney, broke and entered the store of Joseph Haley with intent to steal, and that they did steal therefrom the goods, etc., of said Haley, of the value, etc., against the statute. It appeared in evidence that the goods stolen were

the property of Haley and one Joshua Emery, who were part-
ners in trade." In this case, as in *People v. Frank,* the goods
stolen were from the store of Haley & Emery. Our attention is
also called to *People v. Wallace,* 94 Cal. 497, 29 Pac. 950; *Peo-
ple v. Hughes,* 41 Cal. 234; *Clark v. State,* 29 Tex. App. 437,
16 S. W. 171; *Sharp v. State,* 29 Tex. App. 211, 15 S. W. 176;
*McDowell v. State,* 68 Miss. 348, 8 South. 508; *People v. Hall,*
19 Cal. 425; Bishop's Criminal Procedure, 3d ed., 718, 723,
752, 4886. In *Clark v. State,* 29 Tex. App. 437, 16 S. W. 171,
the indictment alleged that the property stolen was the property
of G. R. West, and the proof showed it to be the property of one
Clark. In *People v. Hall,* 19 Cal. 425, it is said: "An indict-
ment for altering a brand of a horse with intent to steal, and
charging the property as that of an estate, is bad." In *People
v. Wallace,* 94 Cal. 498, 29 Pac. 950, the official syllabus says:
"In an indictment or information for larceny, where the stolen
property is not otherwise described so as to identify the of-
fense, the allegation of ownership is a material part of the de-
scription of the offense charged." We have examined the other
authorities cited, and find they hold to a similar view to those
quoted. The attorney general calls our attention to section
7683 of our statute which says: "When an offense involves the
commission of or attempt to commit a private injury, and is
described with sufficient certainty in other respects to identify
the act, an erroneous allegation as to the person injured, or in-
tended to be injured, is not material." Section 956 of the
Penal Code of California, which is the same as our section
above quoted, has been construed by the California court in
*People v. Smith,* 112 Cal. 333, 44 Pac. 663. That court said:
"Where the complaint before the magistrate charged the steal-
ing of a steer belonging to and being owned by the estate of
W. C. Elledge, deceased, and the information for grand larceny
recited that the steer was owned by Joseph Elledge and Mrs.
M. J. Elledge, as executor and executrix of the estate of W. C.
Elledge, deceased, the variance was not fatal," etc. In *People
v. Prather,* 120 Cal. 660, 53 Pac. 259, a California case, this
language is used: "Under Penal Code, section 956, an errone-
ous allegation as to the person injured is not material." In

*People v. Watson,* 72 Cal. 402, 14 Pac. 97, the official syllabus says: "In a prosecution for larceny, an information which alleges that the thing stolen was the property of a certain woman, is sufficient to sustain a conviction, although at the time of the larceny the alleged owner was a married woman, and the article stolen was bought with the money of her husband." Counsel for both appellant and respondent cite *State v. Farris,* 5 Idaho, 666, 51 Pac. 772. The syllabus says: "Where the information alleges one C. to be the owner of the stolen property, and the proofs show that he was in possession of the property as the agent of the real owner, with full power to sell or otherwise dispose of the same, held sufficient to uphold the allegation in the information." We find no error in overruling appellant's motion for new trial on the ground of insufficiency of the evidence to support the verdict.

The next assignment of error is that the brands upon the animals alleged to have been stolen could not be given in evidence, unless it was shown that such brands had been recorded. Section 1179 of the Revised Statutes says: "In all civil suits, or in any criminal proceeding where the title of livestock is involved, the brand, or mark, on such animal is *prima facie* evidence of the ownership of the person whose brand, or mark, it may be; provided, that such brand has been duly recorded as required by this chapter. Proof of the right of any person to use such brand, or mark, may be made by a copy of the record of the same certified to by the county recorder of any county in which the same is recorded." We find nothing in this section of the statute that prohibits oral proof of an unrecorded brand. Recording it makes it *prima facie* evidence "of the ownership of the person whose brand, or mark, it may be." Counsel for appellant urges that the proof of the brand was the only proof of the ownership of the animals alleged to have been stolen. The record does not sustain him in this contention. We think the evidence was properly admitted under the provisions of our statute.

Error is assigned in the admission of the evidence of George M. Brown in tracing his horses from Kamima, Idaho, to New Richland, Minnesota. We find no error in the admission of

this evidence. Neither do we find error in the admission of the evidence of the sheriff, wherein he testified he went to Boise county to arrest the defendant.

The last assignment of error is on the instructions given by the court on its own motion, and the refusal to give instructions requested by counsel for appellant. We have carefully examined the instructions given by the court, and think they fully and fairly state the law of the case. We find no error in those given by the court, or the refusal of those requested by counsel for appellant.

The judgment of the lower court is affirmed.

Sullivan, J., concurs.

QUARLES, C. J.—I concur in the result reached. I do not think the description of the property stolen sufficiently explicit. Yet, as it does not appear from the record that the defendant was prejudiced thereby the verdict and judgment thereon should not be disturbed.