KETTENBACH et al. v. UNITED STATES.†

(Circuit Court of Appeals, Ninth Circuit. January 13, 1913.)

No. 2,080.

1. BANKS AND BANKING (§ 256*)—NATIONAL BANKS—OFFENSES—AIDING AND ABETTING—"EVERY PERSON."

Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), denounces a penalty against every president, cashier, teller, clerk, or agent of a national bank who shall falsify reports to the Comptroller of the Currency and every person who, with like intent, aids or abets any officer, clerk, or agent in any violation of such section. Held, that the words "any person" as so used were not limited to persons not connected with the banking association, but included officers and agents of the bank itself, so that the president of a national bank could be properly convicted of aiding the cashier in committing the offense described.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 958–964, 967; Dec. Dig. § 256.*

For other definitions, see Words and Phrases, vol. 3, pp. 2515–2517; vol. 8, p. 7655.]

2. CRIMINAL LAW (§ 1137*)—TRIAL—CONSOLIDATION OF INDICTMENTS—RIGHT TO OBJECT.

Where defendants, charged with falsifying reports to the Comptroller of the Currency, applied for a severance as to them from charges against other defendants, and that all of the indictments involving the applicants be consolidated and tried at the same time, as authorized by Rev. St.

---

§ 1024 (U. S. Comp. St. 1901, p. 720), they could not object after conviction that the court erred in consolidating their indictments for trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3007–3010; Dec. Dig. § 1137.*

Consolidation of and trial of indictments together, see note to McGregor v. United States, 69 C. C. A. 488.]

3. JURY (§ 136*)—INDICTMENTS—CONSOLIDATION—PEREMPTORY CHALLENGES.
Where indictments against two defendants for violating the National Bank Act were consolidated on their application, the consolidated indictments became in legal effect separate counts of a single indictment, and the defendants were therefore only entitled to ten peremptory challenges, as in the case of a trial under a single indictment.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 607–618; Dec. Dig. § 136.*]

4. INDICTMENT AND INFORMATION (§ 121*)—REQUISITES—CERTAINTY—BILL OF PARTICULARS.
Where an indictment against national bank officers for falsifying reports to the Comptroller of the Currency specifically referred to the entries which were alleged to be false, it was not an abuse of the trial court's discretion to deny an application for a bill of particulars calling for the production of practically all the government's evidence to sustain the charge and for items from the bank's books; no affidavit or other showing being made to support the application or show that defendants could not have access to the books, etc.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 316–320; Dec. Dig. § 121.*]

5. CRIMINAL LAW (§ 371*)—EVIDENCE—OTHER OFFENSES—SIMILAR TRANSACTIONS—INTENT.
In a prosecution of national bank officers for falsifying reports to the Comptroller, etc., evidence of the making of a series of false reports as to the bank's condition to the Comptroller of the Currency, beginning seven years prior to the dates of the reports which were counted on in the indictments, showing a uniform system of falsification similar to the falsification of the reports charged in the indictment, was admissible to show motive or intent.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 830–832; Dec. Dig. § 371.*]

6. CRIMINAL LAW (§ 384*)—EVIDENCE—OTHER OFFENSES—TIME.
No limit is placed on the court's power to admit evidence of a series of prior similar transactions committed by the accused in the ordinary course of his business to show motive or intent, but the period of time within which such matter may be competent is a matter largely within the discretion of the trial court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 848; Dec. Dig. § 384.*]

7. CRIMINAL LAW (§ 1035*)—APPEAL—OBJECTIONS AND EXCEPTIONS—NECESSITY.
Improper remarks, alleged to have been made by the trial judge during the progress of the trial in the presence of the jury, cannot be reviewed, where no objection or exception was taken thereto at the trial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2633–2638, 2643, 2644; Dec. Dig. § 1035.*]

8. CRIMINAL LAW (§ 656*)—TRIAL—STATEMENTS BY COURT.
Where, on the trial of bank officers for falsifying reports to the Comptroller of the Currency, the report was blank as to an item of indebtedness to trust companies and savings banks, it was not error for the court to remark, "The report shows blank, and that is reporting

nothing as a matter of fact"; it being the court's duty to state the legal effect of leaving a blank unfilled in such a report.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1524–1533; Dec. Dig. § 656.*]

9. CRIMINAL LAW (§ 762*)—WITNESSES (§ 246*)—FEDERAL COURT—PRACTICE.

A trial judge in a federal court is not a mere presiding officer, it being his function to conduct the trial in an orderly way, with a view to elicit the truth and attain justice between the parties, and he being authorized to interrogate witnesses, and to express his opinion on the weight of the evidence and on the credibility of the witnesses.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1731, 1750, 1754, 1758, 1759; Dec. Dig. § 762;* Witnesses, Cent. Dig. §§ 852–857; Dec. Dig. § 246.*]

10. WITNESSES (§ 269*)—CROSS-EXAMINATION—SCOPE.

It was not error to exclude questions asked of a witness on cross-examination which were not within the scope of his direct examination, and which were not relevant to the issues in the case.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 949–954; Dec. Dig. § 269.*]

11. CRIMINAL LAW (§ 829*) — TRIAL — REQUEST TO CHARGE — INSTRUCTIONS GIVEN.

It is not error to refuse requests to charge substantially covered by instructions given.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011; Dec. Dig. § 829.*]

12. BANKS AND BANKING ( 257*)—NATIONAL BANKS—OFFENSES.

In a prosecution of national bank officers for making false reports to the Comptroller of the Currency, the court properly charged that defendants might be convicted on proof that the false reports were made in pursuance of a previous arrangement between the clerk who made them and the defendants who instigated them, the statute being applicable to counseling and procuring in advance of the act, and refused to charge that, in order to convict, it must be proved beyond a reasonable doubt that defendants directed the specific reports complained of in the indictment or made such reports themselves, as such request assumed that defendants could be convicted only on proof that they made the reports, or stood by and directed that the specific reports be made by another.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965, 966, 970–976; Dec. Dig. § 257.*]

13. BANKS AND BANKING (§ 257*)—NATIONAL BANKS—OFFICERS—OFFENSES —EVIDENCE.

In a prosecution of national bank officers for falsifying reports to the Comptroller of the Currency, evidence *held* sufficient to sustain a finding that defendant K., the president of the bank, participated in the offense, and was therefore guilty.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 965, 966, 970–976; Dec. Dig. § 257.*]

14. CRIMINAL LAW (§ 1023*)—NEW TRIAL—DENIAL—REVIEW.

Denial of a motion for a new trial in a criminal case is not reviewable on writ of error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2583–2598; Dec. Dig. § 1023.*]

In Error to the District Court of the United States for the Southern Division of the District of Idaho; R. S. Bean, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William F. Kettenbach and George H. Kester were convicted of violating the National Bank Act, and they bring error. Affirmed.

George W. Tannahill, of Lewiston, Idaho, Cavanah & Blake, of Boise, Idaho, and James E. Babb, of Lewiston, Idaho, for plaintiffs in error.

Peyton Gordon, of Washington, D. C., and Fletcher Dobyns, of Chicago, Ill., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The plaintiffs in error were indicted under four indictments—Nos. 777, 779, 780, and 782—all charging them with violations of section 5209 of the Revised Statutes (U. S. Comp. St. 1901, p. 3497). They entered a plea of "not guilty" to each indictment, and thereafter, upon their motion for the consolidation of the indictments, an order was made consolidating the same for trial. The jury returned a verdict of guilty on counts 1, 2, 4, 5, and 6 of indictment 780, and returned a verdict of not guilty on the other indictments and on count 3 of 780.

[1] It is contended that the court below erred in overruling the demurrer of the plaintiffs in error to the indictment, which was interposed on the ground that Kettenbach, who was the president of the Lewiston National Bank, was charged with aiding and abetting Kester, the cashier thereof, in committing the offenses alleged. The statute denounces a penalty against every president, cashier, teller, clerk, or agent of a national bank who makes any false entry in any book, report, or statement of the association, and "every person who, with like intent, aids and abets any officer, clerk, or agent, in any violation of this section." The contention is that, under this statute, one officer of a banking association cannot be charged with aiding and abetting another officer in committing the offense which is described therein, and that the provision in regard to persons who aid and abet any officer clerk, or agent of the association applies not to officers and employés of the bank, but to outsiders, persons not connected with the banking association. The language of the statute is broad enough to include the officers of the bank among those who may be charged with aiding and abetting, for it refers to "every person," and such, with possibly one exception, appears to have been the uniform ruling of the courts. United States v. Northway, 120 U. S. 327, 7 Sup. Ct. 580, 30 L. Ed. 664; Evans v. United States, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830; Coffin v. United States, 156 U. S. 432, 15 Sup. Ct. 394, 39 L. Ed. 481; Cochran & Sayre v. United States, 157 U. S. 286, 15 Sup. Ct. 628, 39 L. Ed. 704; United States v. Berry (D. C.) 96 Fed. 842; Gardes v. United States, 87 Fed. 172, 30 C. C. A. 596. The case which seems to be out of harmony with the foregoing is Richardson v. United States, 181 Fed. 1, 104 C. C. A. 69. In that case it was contended that the cashier who was indicted under section 5209 should not have been charged as principal but as aider and abettor, because the false entries, although made at his instigation, were made by others. The court ruled against the contention and held that the cashier

was a principal, notwithstanding that the entries and items falsified were made by clerks acting under his direction. The court said:

"Where an act is done by the procurement of a person, it is his act in effect, even where it is made a crime."

What the court said in that case is in line with an expression in the opinion of this court in the case of Peters v. United States, 94 Fed. 127, 36 C. C. A. 105, in which Judge Hawley, speaking for the court, answering the objection of counsel to the indictment that the cashier was charged in one count with directing and procuring false entries to be made by the bookkeeper, said:

"He is as guilty if he directed false entries to be made by the clerk or bookkeeper as if he made the entry in person."

But in the Richardson Case the court went on to say that the aiding and abetting referred to in the statute "applies to those not connected with the bank who instigate, counsel, or incite those who are." This was an expression of opinion unnecessary to the decision of the case. The question was whether the defendant in that case could properly be charged as a principal. The court held correctly, we think, that he could be. Kettenbach in this case might properly have been charged as a principal. He cannot complain that he is charged as aiding and abetting. By the express language of section 5209 the offense described, whether committed by the direct act of the accused, or by his aiding and abetting another to commit it, is a misdemeanor, and both offenses are of the same grade, and are subject to the same penalty, and those who commit both are in fact principals. Said the court in United States v. Gooding, 12 Wheat. 475, 6 L. Ed. 693:

"In cases of misdemeanor, all those who are concerned in aiding or abetting, as well as in perpetrating the act, are principals."

And this doctrine has been expressly applied to cases of prosecution under section 5209. Gallot v. United States, 87 Fed. 446, 31 C. C. A. 44; United States v. Hillegass (D. C.) 176 Fed. 445. See, also, Bliss v. United States, 105 Fed. 508, 44 C. C. A. 324. There was no error, therefore, in overruling the demurrer to the indictment

[2] We find no merit in the contention that the court erred in consolidating the indictments for trial. Not only was the order made under the authority of section 1024 of the Revised Statutes (U. S. Comp. St. 1901, p. 720), but it was made upon a motion and application of the plaintiffs in error, in which they alleged:

"That each and all of the charges against these defendants or either thereof grew out of one and the same transaction, to wit, the violation of the national banking laws of the United States, and under the law can be tried at one and the same time, and save great expense and many hardships in requiring these defendants to prepare for trial. * * * Wherefore these defendants, and each thereof, respectfully pray that a severance be had as to these two defendants, and that they be tried separately from the other defendants, that each and all the indictments involving these defendants or either thereof be consolidated and be tried at the same time."

The application was supported by the affidavit of counsel for the plaintiffs in error, in which it was stated that the motion was made in

good faith, and not for the purpose of delay, and that it was well founded in law. No exception was saved to the order of consolidation, and the plaintiffs in error are now in no position to assign error to it.

[3] Equally without merit is the contention that the court erred in denying the right of the plaintiffs in error to exercise more than 10 peremptory challenges to jurors. In a second application for a consolidation of the cases and for a severance from Robnett and F. W. Kettenbach, who were indicted with them, the plaintiffs in error said:

"These defendants also waive their right to more than 10 peremptory challenges in case an order is made trying these said indictments at one and the same time, and a severance is granted as to the defendant Clarence W. Robnett, and a severance is granted as to the defendant Frank W. Ketten bach."

That application was verified by the affidavit of the plaintiff in error William F. Kettenbach. Irrespective of the written waiver of the plaintiffs in error of more than 10 peremptory challenges, the consolidation of the indictment under section 1024 grouped together all the counts in all the indictments so consolidated as if they were separate counts in a single indictment. McElroy v. United States, 164 U. S. 76, 17 Sup. Ct. 31, 41 L. Ed. 355; Porter v. United States, 91 Fed. 494, 33 C. C. A. 652; Turner v. United States, 66 Fed. 280, 13 C. C. A. 436. And, the consolidated indictments having thus become in legal effect separate counts in one indictment, the plaintiff in error could exercise only the number of peremptory challenges provided by law for a trial under a single indictment. Krause v. United States, 147 Fed. 442, 78 C. C. A. 642; Kharas v. United States, 192 Fed. 503, 113 C. C. A. 109.

[4] Error is assigned to the denial of the application of plaintiffs in error for a bill of particulars as to indictment 780. Their applications for bills of particulars of the charges in the other indictments were allowed, but as to indictment 780 the court said:

"It appears that the indictment in the case at bar, involving charges of false entries, specifically refers to the entries which are alleged to be false, and it is thought that the defendants by the indictment itself are sufficiently advised of the nature and the details of the charges to enable them intelligently to prepare their defense."

Where the charges of an indictment are so general that they do not fully advise the accused of the specific acts with which he is charged, the court may order that a bill of particulars be furnished him so that he may properly prepare his defense. But the allowance or refusal of the order rests in the sound discretion of the court. In Rosen v. United States, 161 U. S. 29–35, 16 Sup. Ct. 434, 436 (40 L. Ed. 606), the court said that the accused could "have applied for a bill of particulars, which the court, in the exercise of a sound legal discretion, might have granted or refused, as the needs of justice required." Said the court in Breese v. United States, 106 Fed. 680–682, 45 C. C. A. 535, 537:

"The motion was addressed to the discretion of the court, and its refusal was a proper exercise of this discretion."

See, also, Dunlop v. United States, 165 U. S. 486–491, 17 Sup. Ct. 375, 41 L. Ed. 799; State v. Rathbone, 8 Idaho, 161, 67 Pac. 186. In Commonwealth v. Giles, 1 Gray (Mass.) 466, a case which was cited with approval in Dunlop v. United States, the Supreme Judicial Court of Massachusetts said of the office of a bill of particulars:

"When it is once made, it concludes the rights of all parties who are to be affected by it, and he who has furnished a bill of particulars under it must be confined to the particulars he has specified as closely and effectually as if they constituted essential allegations in a special declaration."

In United States v. Adams Exp. Co. (D. C.) 119 Fed. 240, it was said:

"The office of a bill of particulars is to advise the court, or more particularly the defendant, of what facts, more or less in detail he will be required to meet, and the court will limit the government in its evidence to those facts set forth in the bill of particulars."

The application for a bill of particulars which was presented in the case at bar covers seven pages of the printed record. It went into great detail as to all the matters charged, and called for the production of practically all of the evidence of the government to sustain them. It called largely for items from the books of the bank. No affidavit was offered in support of it, and no showing was made that the plaintiffs in error could not have access to the books or obtain therefrom all evidence contained therein as to the matters which formed the substance of the charge against them. The allegations of the indictment were not indefinite or vague, nor does it appear that the plaintiffs in error were entitled as a matter of right to the disclosures of the nature of the oral testimony which the government intended to produce. There was no abuse of discretion, therefore, in the ruling of the trial court.

[5] It is urged that error was committed in the admission of testimony of similar transactions to those which were charged in the indictment to show motive and intent. Upon the proffer of such testimony, counsel for the plaintiffs in error objected on the ground that the testimony was too remote, was beyond the period of the statute of limitations, and did not refer to matters involved in the indictment. The court overruled the objection, held the testimony competent as bearing upon the questions of intent and motive, but confined its admission to the time during which the plaintiffs in error had been officers of the bank. By this ruling there was admitted in evidence a series of other reports to the Comptroller of the Currency, beginning with the year 1900, seven years prior to the dates of the reports which were counted upon in the indictments, in all of which reports there was evidence of a uniform system of falsification as shown by the books of the bank, similar to the falsification of the reports which was charged in the indictment. This evidence was by the instructions of the court to the jury carefully limited in its application to the question of the motive and intent with which the acts charged were committed. The authorities for the admission of such testimony are abundant,

and are not in conflict. In Wood v. United States, 16 Pet. 342, 10 L. Ed. 987, Mr. Justice Story said:

"The question was one of fraudulent intent or not; and upon questions of that sort, where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment. Indeed, in no other way would it be practicable in many cases to establish such intent or motive."

That doctrine has been applied in numerous cases, among which may be cited Coffin v. United States, 162 U. S. 664, 16 Sup. Ct. 943, 40 L. Ed. 1109; Allis v. United States, 155 U. S. 117, 15 Sup. Ct. 36, 39 L. Ed. 91; Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278; Dow v. United States, 82 Fed. 904, 27 C. C. A. 140; Bacon v. United States, 97 Fed. 35, 38 C. C. A. 37; Wolfson v. United States, 101 Fed. 430, 41 C. C. A. 422; Spurr v. United States, 87 Fed. 701, 31 C. C. A. 202; United States v. Breese (D. C.) 131 Fed. 915; Brown v. United States, 142 Fed. 1, 73 C. C. A. 187. The objection that the testimony so admitted was too remote in point of time is not tenable.

[6] No limit is placed upon the power of the court to admit evidence of a series of prior similar transactions committed by the accused in the ordinary course of his business. Said the court in Spurr v. United States:

"The period of time within which the matter offered to establish the guilty purpose must have occurred to permit of their admission is largely discretionary with the court."

In Walsh v. United States, 174 Fed 615, 98 C. C. A. 461, the court permitted the introduction of evidence of similar offenses committed during the 12 years prior to the transaction which formed the basis of the indictment. In Williamson v. United States, the Supreme Court said:

"The modern tendency, both of legislation and of the decision of courts, is to give as wide a scope as possible to the investigation of facts. Courts of error are especially unwilling to reverse cases because unimportant and possibly irrelevant testimony may have crept in, unless there is reason to think that practical injustice has been thereby caused."

There are several assignments of error, upon which are presented the contention that the court below during the progress of the trial, and in the presence of the jury, manifested bias and prejudice against the plaintiffs in error, and made remarks which were prejudicial to them. We have given careful consideration to this contention, and we find it wholly without justification. The remarks of the court, in the half a dozen instances which are referred to, were not inappropriate to the matter in hand, and were not such as to indicate or express bias or prejudice.

[7] It is to be observed, also, that in not a single instance was an exception taken to the language used. This fact alone is sufficient to dispose of the contention which is made in this court. But, to illus-

trate the nature of the remarks of the court to which objection now for the first time is made, we will refer to the incident which the plaintiffs in error seem to consider the most important.

[8] A witness was asked what the books of the bank showed on a certain day as due to trust companies and savings banks. He answered $25,305.30. Then the assistant district attorney remarked:

"The report shows none."

Counsel for the plaintiffs in error objected to that statement, and remarked:

"The statement might show blank in a certain place."

The court then said:

"The report shows blank, and that is reporting nothing as a matter of fact."

That was not an improper remark. It was the duty of the court to state what was the legal effect in a report to a Comptroller of the Currency of leaving a blank unfilled under a heading which called for an answer, and to instruct the jury that to do so was to report that the bank had nothing under that heading.

[9] The trial judge in a federal court is not a mere presiding officer. It is his function to conduct the trial in an orderly way with a view to eliciting the truth, and to attaining justice between the parties. It is his duty to see that the issues are not obscured, that the trial is conducted in a proper manner, and that the testimony is not misunderstood by the jury, to check counsel in any effort to obtain an undue advantage or to distort the evidence, and to curtail an unnecessarily long and tedious or iterative examination or cross-examination of witnesses. He has the authority to interrogate witnesses, and to express his opinion upon the weight of the evidence and the credibility of the witnesses. In the case at bar there was no such expression of opinion by the court, and there is nothing in the record which is before us to indicate or to give the jury the impression that the judge was in any degree partial or biased or prejudiced against the plaintiffs in error.

It is contended that the court erred in permitting counsel for the government on the cross-examination of the plaintiffs in error, who appeared as witnesses in their own behalf, to interrogate them as to matters which were not brought out on their direct examination. This contention is not sustained by the bill of exceptions. The plaintiff in error Kettenbach on his direct examination denied his guilt as to each offense charged against him in the indictments, and testified as to his relation to the bank and the other defendants, and to many matters that had been put in evidence by the government, and he was interrogated as to the alleged similar offenses or similar transactions which had been testified to by various witnesses, and he testified that he made none of the entries in the reports to the Comptroller of the Currency, that he made no request that Robnett, Chapman, or Kester make any entries in those reports,

and that he had nothing to do with making out the reports. He testified:

"Once or twice the reports were made up on a blank form in pencil and handed to me, and I copied them and looked over the general totals, but I never went to the physical assets of the bank and worked out or made a report to the Comptroller of the Currency during the time I was in the bank."

His cross-examination was confined to matters connected with the evidence he had adduced on his direct examination. Nothing is pointed out that goes beyond that. The same is true of the cross-examination of the plaintiff in error Kester. He had given a detailed history of his connection with the bank. He denied that he was guilty of the offenses charged. He was interrogated as to his version of the transactions testified to by Robnett, and as to all the principal items in the evidence adduced against him by the government. His attention was called to the evidence of similar prior transactions, and his counsel said:

"I will ask you to explain them briefly to the jury."

His cross-examination was confined within the lines of the matters he had testified to upon the direct examination. The testimony admitted on cross-examination to which exception has been taken was testimony brought out in answer to the inquiry whether he made out the reports to the Comptroller of the Currency, whether there was anybody else who had authority to make them out, and how he made out those of the reports which were exclusively in his own handwriting. Whether as an officer of the bank he had knowledge of certain overdrafts, and whether those overdrafts were reported in the schedule.

Error is assigned to certain rulings, whereby the court sustained objections to questions propounded by counsel for plaintiffs in error to the witness Robnett on cross-examination. Robnett had been clerk and bookkeeper of the bank. In two of the indictments he was jointly indicted with the plaintiffs in error. He was made a witness for the government, and on two of the indictments his testimony was the principal evidence for the government. On indictment 780, on which the plaintiffs in error were convicted, his testimony was corroborated by other witnesses. He testified to a conversation with Kester, in which Kester said that he and others were figuring on increasing the capitalization of the bank and that other men were coming in, and that it would be necessary to appoint a committee to check up the overdrafts and bills receivable, and that Kester remarked:

"And your indebtedness is quite large, and it is best not to increase it any more, and, if there is any amounts, you have got to take care of in taking care of your deals, for the present we had better run it through the silent indebtedness and inactives."

On cross-examination the witness was asked to state to whom he mentioned this conversation, and whether he had written out a memorandum of it, and he was asked:

"Was anything in that memorandum about Kester wanting you to go to Asotin to open up a bank there?"

This was objected to as not cross-examination, and the objection was sustained, but no exception was taken to the ruling of the court. The witness was further interrogated on cross-examination as to his testimony given on a trial of an indictment of the United States against Kettenbach, Kester, and Dwyer, charging them with fraudulently acquiring title to timber lands, and was asked whether Kester at any time had any connection with him in acquiring title to timber lands or any part thereof, to which he answered that he had not. He was then asked:

"State whether or not you so testified?"

To which he answered:

"I did not. Q. Was that evidence true or false?"

On objection the court ruled that it was wholly immaterial whether Robnett so testified or not, to which an exception was reserved. Robnett was also asked whether he had not testified that he had no connection with Kester in acquiring title to lands. The court ruled that the testimony was too remote, and said:

"I don't see how it is inconsistent with any testimony he has given here on this trial."

An exception was taken to the ruling. Robnett was asked other questions as to what he had testified to in that case with relation to his interest in the acquisition of title to timber lands, and his connection with transactions to acquire title thereto, and as to whether he had denied that he had entered into a conspiracy or combination with Kester, Kettenbach, and Dwyer to acquire title to government lands.

[10] We are unable to see, and it is not pointed out, how the testimony so sought to be elicited on the cross-examination of Robnett had anything to do with his direct examination, or with the issues in the case. It did not tend to contradict anything that he had testified to on direct examination, for he had stated that he had heard conversations about Kester and Kettenbach's purchase of timber lands, and that he had asked them to let him go in with them, that they had said that they could not let him work with them, but that he could go into it in his own way, on his own behalf, and "that they would see that I would get the money that was needed." And he testified that he did get the money from the bank through overdrafts and notes. The foregoing are samples of the alleged errors of the court in ruling upon the cross-examination of Robnett. The remainder of the assignments of error thereto are equally devoid of merit.

[11] Error is assigned to certain instructions given by the court, and to the refusal to give instructions which were requested by the plaintiffs in error. As to the requested instructions, those portions thereof which correctly stated the law were in substance covered by the instructions which were given. There were certain portions thereof which the court properly refused.

[12] Thus the court was requested to instruct that it must be

proven beyond a reasonable doubt that the defendants directed the specific entries complained of in the indictments to be made, or made them themselves. This is not a correct statement of the law. It assumes that the defendants could be found guilty only upon proof that they made the entries or that they stood by and directed that the specific entries be made by another. The court properly instructed the jury that the defendants might be found guilty upon proof that the false entries were made in pursuance of a previous arrangement between the clerk who made them and the defendants who instigated them. The statute is "applicable to counseling and procuring in advance of the act." United States v. French (C. C.) 57 Fed. 382, 387; Peters v. United States, 94 Fed. 132, 36 C. C. A. 105; United States v. Northway, 120 U. S. 327, 330, 7 Sup. Ct. 580, 30 L. Ed. 664. The instruction which was given upon that subject was excepted to, but no other exception was taken to the charge except to the portion thereof by which the jury were instructed that if it appeared from the testimony, and they believed beyond a reasonable doubt, that the defendants aided, incited, encouraged, stimulated, or instigated Robnett to commit either of the offenses, they would be guilty of the offense which they so aided and abetted. The question raised by this exception has already been discussed under the head of the demurrer to the indictment, and nothing need be added to what was there said.

[13] It is earnestly contended that there was no evidence of Kettenbach's participation in the offenses of which he was found guilty, and that the court below erred in denying the motion to instruct the jury to acquit him. We have gone carefully through the record, and among other things we find the following: Kettenbach was the president and Kester was the cashier of the bank. There is convincing evidence that reports which contained grossly false entries were made as charged in the indictment, and that similar reports were made during the period of seven years preceding the time of the offenses so charged, and during all of which time these two officers of the bank controlled its affairs. Robnett testified that for the purpose of approximating the time when the bank might receive a call from the Comptroller for a report, Kettenbach kept in his desk a card running over a period of ten years, which set forth the different dates on which calls from the Comptroller had been made. "From that we could approximate within a few days the time a report would be called." One of the prior reports which contained the same class of false entries was made out entirely in Kettenbach's handwriting, and was sworn to by him. Another was made out by Kettenbach and Robnett. It is true that Kettenbach testified that in making out these reports he only copied what was handed to him on a blank form, and written with a pencil. But the jury were not bound to accept that explanation, and they may well have found reason to discredit it altogether. It is not explained why it was necessary for Kettenbach to copy what had been made out by a clerk. It was not necessary that the entries in the reports should have been made in his handwriting, or

in the handwriting of any officer of the bank. The evidence shows also a system of inflating the assets of the bank and bolstering up its reserve, in which Kettenbach took an active part. For instance, on March 2, 1905, he, as president of the bank, issued a certificate of deposit to the Idaho Trust Company for $20,000. On the same day the Trust Company issued two certificates of deposit of $10,-000, each to Kettenbach's bank, and on the same day the bills receivable of that bank was increased $10,000, and its gold in vault was increased a like sum. A report to the Comptroller of the Currency was called for as of March 14, 1905. Eight days after the date of that report, each bank took back its certificates of deposit. The bills receivable of the Lewiston National Bank were reduced $10,-000, and its gold in vault was reduced in like sum. Of this transaction Chapman, the teller, testified that the bank was low on reserve, and, in order to bolster up the reserve, "Mr. Kettenbach went to the Idaho Trust Company and got a certificate of deposit. I think there were two for $10,000 each, and one of the $10,000 certificates I was asked to put in the safe and count as gold coin, as cash." He testified that Kettenbach told him to do that. Again; there is evidence that in March, 1907, the bank owed $30,000 to the Spokane & Eastern Trust Company, secured by $60,000 of its bills receivable; that, on making out a report to the Comptroller about that time, Kester went to Kettenbach, and said that they ought to make some mention of the notes that were in the Spokane & Eastern Trust Company as collateral for the $30,000 bills payable, and that Kettenbach said, "No; don't do it;" and that Kester said, "You remember the letter we got from the Comptroller in regards to the National Park note, and he is likely to make a comment on this, and I think we had better make mention of it;" and that Kettenbach said, "No; it would just reduce our bills receivable, and lower our balances," and told him not to make any mention of it, that it was a state bank, and that the national bank examiner would never get in touch with those there, and before another examination the note would be paid and the funds would be back in the Lewiston National Bank, and that he would take the responsibility. Chapman testified that he overheard a conversation in which Kettenbach wanted Kester to make the report a certain way "that would please him, and Mr. Kester hesitated, saying he would not do it—that it was unlawful—but Mr. Kettenbach, I think, finally persuaded him to do so." There can be no question of the evidence that both Kester and Kettenbach, by means of overdrafts, used large sums of the funds of the bank in their private enterprises, and that in all the reports to the Comptroller none of these overdrafts was reported under the head of overdrafts of officers of the bank. We think this evidence was sufficient to go to the jury on the question of Kettenbach's participation in the offenses charged against him. In fact, the whole testimony suggests the conclusion that the false entries which were repeated year after year in a series of more than 30 reports to the Comptroller were made under the direction of the two men who were in control of

the bank's affairs. They were the only persons who had any motive for making false reports. The clerks and bookkeepers had none, and it is not conceivable that the cashier alone was aware of the manner in which the books were kept and the reports were made. Kester testified that he and Kettenbach together managed all the important affairs of the bank, and that one of the important matters of the bank was making out the reports to the Comptroller.

[14] Error is assigned to the denial of the motion of the plaintiffs in error for a new trial. The motion was supported by affidavits. The affidavits presented matter tending to show that there was an opportunity to influence the jury improperly, and matter showing that certain witnesses for the government made statements out of court which were contradictory to the statements which they made on the trial. The court below entertained the motion, and considered the affidavits, and his ruling thereon is not subject to review in this court. See the decision of this court in Holmgren v. United States, 156 Fed. 439, 84 C. C. A. 301, affirmed in Holmgren v. United States, 217 U. S. 509, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778.

There are other assignments of error which we have considered and which we find it unnecessary to discuss. We find no error under any of them.

The judgment of the court below is affirmed.